### MERWIN and others *against* CAMP and others.

*June 21.*

Where part of the inhabitants of an ecclesiastical society, which previously embraced all the inhabitants of the town, organized themselves as a society, under the act of *May* 1804, *tit.* 151. *c.* 4. it was held, that this continued to be the same ecclesiastical corporation.

A deed of land, attested by one witness only, was not a valid transfer under the laws of the colony in 1672.

The antiquity of the deed, and its having been kept and found with other ancient writings, in the office of a deceased town-clerk, though proper to evince its genuineness, do not conduce to establish its validity.

A tenant is precluded from contesting the title of his landlord.

Where a lease of a lot of land, for a valuable consideration received of the society, was executed to *E. G.*, the minister of that society, for the use and benefit of the ministry, during the lessor's natural life, and his successor's good pleasure, it was held, that the estate created by the lease, was determined, by the death of the lessee.

The society not being party to such lease, and having no interest in the land, was not thereby estopped to deny the lessor's title.

THIS was an action of trespass *quare clausum fregit*, brought

New-Haven,
June,
1819.

Merwin
v.
Camp.

by the plaintiffs, as agents of the first society of *Durham* ; and tried in *Middlesex* county, *December* term, 1818, before *Trumbull, Hosmer* and *Peters*, Js.

On the trial, the defendants admitted the acts complained of; but rested their defence on the following grounds: 1. That at the time those acts were done, one *Samuel C. Camp* was in possession under the plaintiffs as their tenant ; and that the plaintiffs, therefore, could not sustain the action.    2. That the defendants owned the *locus in quo*, as heirs of one *Hezekiah Talcott*, deceased.   In order to prove *Talcott's* title, they offered in evidence, first, a grant from the General Assembly to one *Thomas Bunce*, a soldier in the *Pequot* war.   Secondly, a deed from *Bunce* to one *John Talcott*, the father of *Hezekiah Talcott*, dated in 1672, and attested by one witness, accompanied with an exemplification of an act of the colony of *Connecticut*, passed *October* 4th, 1660, in these words :   "*To prevent future inconvenience, and unnecessary trouble that may ensue, by unwritten grants, bargains, sales or mortgages ;* IT IS ORDERED BY THIS COURT, That from henceforth, all grants, bargains, sales or mortgages of houses and lands shall be in writing, and subscribed by the grantor, with his own hand or mark, unto which mark his name shall be annexed, and also subscribed by two witnesses at least, with their own hands or marks, unto which marks their names shall be annexed ; and that no grant, sale, bargain or mortgage shall be of value, but such as are written and subscribed as abovesaid.   IT IS ALSO ORDERED, That the said writing shall be recorded according to former order."  " IT IS ALSO ORDERED, That a lawful record of any grant, bargain, sale or mortgage, either in the country book, or the town records, where the house and land lieth, shall be of equal value with a written deed of any grant ; provided the record, (if no other written deed be made as abovesaid) be testified and subscribed, by one witness at least, beside the recorder." (a)    Thirdly, a deed given by *Hezekiah Talcott* to the town of *Durham*.   Fourthly, a lease from *Hezekiah Talcott* to the Rev. *Elizur Goodrich*, D. D. dated " *Durham, November* 4th, 1762," in these words :  " To whom it may concern, know, That I, *Hezekiah Talcott*, for a valuable consideration to my satisfaction, received of the town, do let and release to the Rev. *Elizur Goodrich*, my lot lying in *Durham*,

(a) 2 *Col. Rec.* 134, 5.

bounded *East, West* and *North* on highway, containing about six acres, [the *locus in quo*] for his use and improvement, during my natural life, and for the use and benefit of the ministry, during my successor's good pleasure. *Hezekiah Talcott.*" The defendants also offered some other documents, which it is unnecessary to specify, accompanied with proof, that said lease and those documents, and a book of ancient records of the town of *Durham*, were found, since the commencement of this suit, and since the death of Gen. *James Wadsworth*, of *Durham*, on the 22nd of *September*, 1817, in different places, among his papers ; it being admitted, that he was town-clerk of *Durham* from 1756 for about thirty years.   In 1756, Dr. *Goodrich* took possession of the *locus in quo* under the town of *Durham*, as their minister, and had actual and sole possession thereof, until his death in 1797.   The same place was occupied as a parsonage lot, under the town, by his predecessor, the Rev. Mr. *Chauncey*, from about the year 1709 to 1754 ; and by his successor, the Rev. Mr. *Smith*, until 1817, when the latter person relinquished it to the society.   *Hezekiah Talcott* died in 1764.   The plaintiffs objected to all the documents offered by the defendants, and to the evidence accompanying the same.   The court rejected the deed from *Bunce*, on the ground that it had only one witness ; and also rejected all the other documents, except the lease, which they permitted to go to the jury, on the evidence as to the question of the delivery and acceptance thereof.

The plaintiffs offered testimony to shew, that they were in actual possession of the lot in question, at the time the trespass was committed.   The defendants introduced testimony to prove, and claimed, that they had proved, that the town of *Durham*, was, at the time of its incorporation, in the year 1708, and had since remained, one ecclesiastical society, until *December*, 1804, and as a town, and by its town officers, did all its ecclesiastical business ; and that in *December*, 1804, the plaintiffs, being then but a part of the town of *Durham*, formed themselves into an ecclesiastical society ; the other part dissenting. The defendants, therefore, claimed, that the court ought to charge the jury, that the plaintiffs had no title to the *locus in quo*, which, if not the property of the defendants, was vested in the town of *Durham*.   The defendants further claimed, that the court ought to charge the jury, that if they should find, that said lease was executed by *Hezekiah Talcott*, at the

*New-Haven,
June,
1819.*

*Merwin
v.
Camp.*

New-Haven,
June,
1819.

Merwin
v.
Camp.

request of the town of *Durham*, and by that town accepted, in the year 1762, the time of its date, their verdict must be for the defendants.   The court charged the jury as follows : " The first question for the consideration of the jury, is, whether the society, at the time stated in the declaration, were in possession of the land in question, so as to enable them to maintain trespass.   If the society were in possession, this throws the burden of proof upon the defendants, to shew that they have a better title.   The defendants claim the land as heirs of *Hezekiah Talcott*, and produce a lease of it from him to the Rev. Dr. *Goodrich*, deceased, under which, they say, the society held it.   It appears from the evidence before you, that *Hezekiah Talcott* had no title to the land, unless by virtue and operation of that lease, and an acceptance of it, by the society.   If the society accepted that lease, and held under it, as tenants of *Hezekiah Talcott*, the law is so, that a tenant cannot be permitted to deny the title and authority of his landlord ; and the society would be bound by such acceptance, if they held the land under that lease, at the time of the trespasses charged.   But the court instruct you, that the force and operation of that lease expired, either upon the death of *Talcott*, the lessor, or at farthest, upon the death of Dr. *Goodrich*, the lessee.   If, then, you find, that the society, who are the plaintiffs, were, at the time of the trespass charged, in possession of the land in question, you will return a verdict for the plaintiffs ; if otherwise, for the defendants."

The jury found for the plaintiffs ; and the defendants moved for a new trial.   The court reserved the motion.

*N. Smith* and *Staples*, in support of the motion, contended, 1. That if the defendants were liable, the *town* of *Durham*, and not the *society*, were entitled to bring the action.   The town of *Durham* remained one ecclesiastical society until 1804 ; then a new society, a new body politic, was formed, comprising a *part* only of the town.   The new society had none of the essential characteristics of identity with the old. It was composed of different members ; it had different powers, different officers, and a different organization.   Now, a new corporation, formed from an old one, does not take from the old one its property, but leaves it where it was.   The act of *May*, 1804. *tit.* 151. *c.* 4. and the cases of *Huntington & al. v. Carpenter, Kirby* 45.   *Sage & al. v. White*, 2 *Root* 111. and

*Sedgwick & al.* v. *Pierce,* 2 *Root* 431. were referred to, and commented on.

2. That the deed from *Bunce* to *John Talcott* ought to have been admitted, notwithstanding its attestation by one witness only.   First, because the act of *October* 4th, 1660, which remained in force until *December*, 1673, when the revised statutes took effect, (*b*) authorised a conveyance by record, attested by one witness only.   Secondly, because the deed in question is an ancient deed, and was found among the ancient papers of the town-clerk.   *Phill. Ev.* 317. 349. 12 *Vin. Abr. tit.* Evidence.   [A. b. 5.]   *p.* 84. *pl.* 5. 6. 8.

3. That the plaintiffs, having accepted a lease under the defendants, and having gone into possession under that lease, are estopped to deny the title of the defendants.   This position, it was presumed, would not be controverted, provided the relation of landlord and tenant subsisted between the parties, at the time of the alleged trespass.   It was then contended,

4. That the charge, instructing the jury, that the operation of the lease expired on the death of *Dr. Goodrich*, was incorrect.   Though by this event, or rather by the death of the lessor, *the tenancy at will* was determined ; yet *the relation of landlord and tenant* between the heirs of the lessor and the society continued ; and that relation still precluded the latter from contesting the title under which they held.   The rule is no less applicable to a tenant *at sufferance* than to a tenant *at will.*

*Sherman*, contra, contended, That the *society* were entitled to the land in question, and were, of course, the proper party plaintiffs.   There is nothing in the act of *May*, 1804, which purports to create a *new* corporation, but merely to reorganize an old one.   A new organization of a corporation does not divest it of its property.   The authorities referred to, *e contra*, from *Kirby* and *Root*, are not inconsistent with this position.

He then remarked, That bare possession, by one party, entitles him to bring trespass against another party, having no better title.   Here, the fact of the plaintiffs' possession was distinctly submitted to the jury ; and that fact has been found in

(*b*) See *Conn. Stat.* Advertisement, *p.* ix   *.edit.* 1808.

*New-Haven,*
*June,*
*1819.*

*Merwin*
*v.*
*Camp.*

the plaintiffs' favour.   The only remaining question, then, is, have the defendants shewn, or offered to shew, by legal evidence, a better title ?

1. The deed from *Bunce* did not establish such title.   The act of *October* 4th, 1660, prescribed two modes of making a conveyance of land ; first, by a *deed*, subscribed by two witnesses ; and secondly, by a *record*, attested by one witness, besides the recorder.  The conveyance in question was not by record, but by deed ; and that deed was not perfected according to law ; and was, therefore, void.   If it was void originally, it is still so, wherever it may have been kept, or found. *Quod ab initio non valet, tractu temporis non convalescit.*

2. The defendants have not shewn a title by estoppel ; *i. e.* from the facts disclosed, the plaintiffs are not estopped to deny the defendants' title.   First, the lease in question was not to the town, or the society, but to the Rev. *Elizur Goodrich.* He alone had the legal title created by the lease ; and his rights alone could be affected by it.   Secondly, the estate, which was an estate at will, was determined by the death of the lessee.   The heir of a tenant at will has no right to enter ; if he does, he becomes a trespasser.   *Litt. sect.* 82.   *Co. Litt.* 62. *b.*   Thirdly, the lease in question was a deed poll, " which doth not work any estoppel."   *Shep. Touch.* 53.

Further, the plaintiffs not only stand on the solid ground of possession, without any paramount title by the defendants, but they shew a good title in themselves, by possession ; having been in *exclusive* possession from 1709 to 1762, and in actual possession, for more than a century.   The lease to Doct. *Goodrich* was of no avail, either to rebut the statute of limitations, or to make an original title to the defendants.

HOSMER, Ch. J.   This is an action of trespass, brought by the first society of *Durham*, against the defendants, for entering on a lot of land, and doing damage.   At the time of the entry, the plaintiffs claimed to be in the actual possession. The jury were directed, " if the society were in possession, that the burden of proof devolved on the defendants, to show a better title."   The legal propriety of the charge, thus far, does not admit of a question.   Trespass is an action founded on possession merely ; and it is not necessary that the title should come into view.   Any possession constitutes a legal right of recovery against a wrong-doer.   *Lambert* v. *Strother, Willes,*

218. *Harker* & al. v. *Burkbeck* & al. 3 *Burr*. 1556. *Graham* v. *Peat*, 1 *East*, 244. *Byrne* & al. v. *Barber*, 5 *Johns*. 66. *Crosby* v. *Wadsworth*, 6 *East*, 602. 1 *Chit. Plead*. 16. 175.

On the question, whether the plaintiffs were a new society springing into existence in 1804, or a continuation of the former society, it is not absolutely necessary to express an opinion. I will, however, briefly observe, that they were the old society organized under the statute, and continued to be the same ecclesiastical corporation, which, at first, embraced all the inhabitants of the town. The reasons, which justify this opinion, may be found in *Sedgwick* & al. v. *Pierce*, 2 *Root*, 431. which case I consider as sound law.

The defendants claim title through the grant, in writing, of one *Thomas Bunce*, executed in the year 1672, and witnessed by one witness only. Twelve years previous to this supposed grant, the law was passed requiring two witnesses to a deed, and has ever since remained in force. It has been contended, by the defendants, that the writing claimed to be a grant, was not a *deed*, but a transfer on the town books, authorized by the act of 1660. By that law, it was enacted, " that a lawful record of a grant &c. in the town records &c. shall be of equal value with a written deed, provided the record, (if no other written deed be made as abovesaid,) be testified and subscribed by one witness, at least, besides the recorder." The question, then, arises, was the grant of *Bunce a deed*, or *a transfer* on the town books? Most unquestionably it was the former. The writing purports to be *an indenture ;* a term which denotes a deed of a particular description. It was *signed, sealed* and *delivered ;* facts which constitute the precise definition of a deed, and which preclude the idea of a transfer on the books, which, from its nature, admits of no delivery. And the entry of the register on the supposed grant, exhibits the light in which the transaction was viewed by him : " Received of Capt. *John Talcott, deed* of land." On this point there exists neither doubt, nor serious question.

It, however, has been insisted, that the *antiquity* of the deed authorizes a different application of the statute, from what it would, if it were a modern transaction. If the enquiry related to the proof of its execution, or the genuineness and authenticity of the instrument, the remark might have some foundation. But the precise question for determination, is, whether a deed with one witness only, is legally sufficient to trans-

fer lands, when tested by the requirements of the statute. On this subject, whether the transaction originated yesterday, or a century since, constitutes no essential diversity. The statute law, from the existence of the deed to this moment, has been invariably the same; admit the authentication of the deed to be the same; then, when the same measure is applied to the same subject, the time of the authentication cannot make any difference. From the same premises, the legal and logical result is precisely the same.

All pretence of title, then, on the part of the defendants, fails from the incompetency of *Bunce's* deed, which constitutes an indispensible part of it.

It has been insisted, by the defendants, that the plaintiffs were estopped, by virtue of a lease, from questioning their title. *Hezekiah Talcott,* under whom the defendants claim, on the 4th of *November* 1762, made a lease of the premises to the Rev. *Elizur Goodrich,* during his natural life, for his use and improvement, and for the benefit of the ministry during his successor's good pleasure. Under this instrument, Doct. *Goodrich* held possession until he died in the year 1797. The death of Doct. *Goodrich* unquestionably terminated the estate created by the lease. *Co. Litt.* 62. *b. s.* 82. It follows, as an indisputable legal consequence, that the estoppel, if it ever existed, was then determined. *Coke Litt.* 47. *b. Brudnell* v. *Roberts,* 2 *Wilson,* 143. 4 *Com. Dig.* 85. 4 *Bac. Abr.* 191. For, if a man take a lease for years of his own land, by indenture, if the lease determines, it shall be a determination of the estoppel. I repeat, *if the estoppel ever existed;* for " a lessee by deed poll," (and the lease was nothing more,) " is not estopped to say, that the lessor had nothing at the time of the lease made." *Coke Litt.* 47. *b. Shep. Touch.* 53. 4 *Com. Dig.* 78. 4 *Bac. Abr.* 189, 90. Besides, the plaintiffs were not parties to the lease, nor had they any legal interest in the land. The objection made is manifestly without support.

One question yet remains to be considered. It has been contended, that the plaintiffs were tenants to the defendants, at the time of their entry. If such is the fact, they cannot, in an action of trespass, be permitted to dispute the title of their landlord. *Balls* v. *Westwood,* 2 *Campb. Rep.* 11. *Jackson* d. *Low & al.* v. *Reynolds,* 1 *Caines,* 444. *Jackson* d. *Bleecker,* v. *Whitford,* 2 *Caines,* 215. *Jackson* d. *Vandeuzen & al.* v. *Scis-*

*sam,* 3 *Johns. Rep.* 498. *Jackson* d. *Van Alen* v. *Vosburgh,* 7 *Johns. Rep.* 186. *Clason* v. *Morris,* 10 *Johns. Rep.* 538. *Jackson* d. *Anderson & al.* v. *Mc'Leod,* 12 *Johns. Rep.* 182. On this enquiry recurrence must be had to the motion. As the mover takes the burden of presenting the facts on which his objection is founded, the court is not authorised to assume, that there were any, except those which he has exhibited, and which have been allowed. On examining the motion, it no where appears, that the plaintiffs were tenants to *Hezekiah Talcott,* or the defendants, or that an enquiry of this nature was intimated at the trial. The facts, as they are stated, are; that Doct. *Goodrich,* under the town, occupied the land in question, until his death in 1797; that afterwards, in the same manner, it was possessed by the Rev. Mr. *Smith,* until 1817, when he relinquished it to the society. It is very material to remark, that there is no suggestion, that Mr. *Smith,* or the plaintiffs after him, entered by the defendants' permission.

The defendants claimed, that the court should instruct the jury, that the premises, if not the defendants' property, were vested in the town of *Durham;* and that if they found the lease was executed by *Hezekiah Talcott,* at the request of the town, and accepted by them in 1762, their verdict must be for the defendants. This was the whole of their request. No pretence was made that the plaintiffs were their tenants, at the time the tresspass was committed. The point presented was a question of law, founded, not on the relation of landlord and tenant subsisting in 1818, the time of the defendant's entry; but on the acceptance of the lease in 1762; an enquiry entirely aside from the above suggestion. Accordingly, the court charged the jury on the legal operation of the lease, and that, on the death of Doct. *Goodrich,* the lessee, it expired. This is decisive to shew the manner in which the claim of the defendants was considered. The jury were instructed, that a tenant cannot be permitted to deny the title of his landlord; and that the society would be bound by their acceptance of the lease, if they held the land under it, at the time of the tresspass charged. The court did not inform them, if the plaintiffs held under the defendants as tenants, in any sense, that they could not sustain their action, and for this convincing reason; because the fact of such tenancy does not appear to have been even intimated. If the matter contended for by

the defendants existed at the trial, it should so prominently have been stated, as not to be the subject of reasonable doubt : On the contrary, no construction of the motion can render its existence even remotely probable. It is perfectly compatible with all the facts appearing, that the possession of Mr. *Smith,* and after him, of the plaintiffs, was adverse from its commencement.

PETERS, J.    I dissent from the opinion of the Chief Justice merely as to the effect of the lease of *Hezekiah Talcott,* and the charge of the court relative to its termination. The acceptance of the lease, by the society, is a question of fact, and was properly left to the jury. And the court were perfectly correct in saying, " That a tenant cannot be permitted to deny the title and authority of his landlord." But they erred in adding, " That the force and operation of that lease ceased and expired upon the death of *Talcott* the lessor, or at farthest, upon the death of the Rev. *Elizur Goodrich,* the lessee." I am not about to deny the ancient doctrine of the common law, handed down to us from the *Year-Books,* (*Bro. Abr.* tit. *Tenant a volunte,*) and now recognized by his honour, the Chief Justice, " That tenancy at will determines on the death of the lessor." But we have equal authority for holding, that the relation of landlord and tenant does not cease on the expiration of the tenancy at will, but becomes a tenancy at sufferance, and the occupant liable to be treated as a tenant or disseisor, at the election of the lessor, or his heirs. *Co. Litt.* 57. *b. Blunder* v. *Baugh, Cro. Car.* 302. *Bac. Abr.* tit. *Disseisin.* 2 *Bla. Comm.* 153. *Taylor* d. *Atkyns* v. *Horde,* 1 *Burr,* 60.

The acceptance of the lease, by the society, was a recognition of the title of the lessor, and *quoad hoc* and the lessee, was equivalent to homage and attornment at common law. *Litt.* sect. 85. Having consented to occupy by his permission, they could not convert their occupation into a disseisin, by which alone they could extinguish the title of the lessor, or acquire one by possession. *Phill. Ev.* 171. and the cases there cited. *Brandt* d. *Walton* v. *Ogden,* 1 *Johns. Rep.* 156. 1 *Swift's Syst.* 338.

If the society accepted the lease, it constituted the corporation, not Doct. *Goodrich,* lessee. The consideration moved from them. They, not Doct. *Goodrich,* were *cestuy que use.* He was their minister. His services and occupation

were for their benefit; and so were his successor's. The corporation could not occupy *per se :* they could do it only by their minister, or agent.

The mere act of accepting the lease is an estoppel to the society, and all claiming under them; and it is perfectly immaterial, whether the lease were by indenture, deed poll, parol, or any other act *in pais.* " *Et issint,*" saith *Littleton,* sect. ·667. " *home poit veier un matter en ceo case, que home serra estoppe per un matter en fait, coment que nul escripture soit fait per fait indent ou auterment.*" The same doctrine is more fully laid down, by Lord *Coke, Co. Litt.* 352. *a.* " There be three kinds of estoppel, 1. by matter of record, *viz.* letters patent, fine, recoverie, pleading, &c.; 2. by matter in writing, as by deed indented, or deed poll; 3. by matter *in paiis,* as by livery, by entry, by acceptance of an estate, whereof *Littleton* maketh a special observation, that a man shall be estopped by matter in the country, without any writing."

For these reasons I advise a new trial.

CHAPMAN and BRAINARD, Js. concurred in the opinion of the Chief Justice.

BRISTOL, J. The court being unanimous on all the points in this case, except that arising out of the lease, my remarks will be confined to this question.

It will be observed, that the town of *Durham* had been in possession of the lot in question, for about fifty years, previous to the date of the lease; during which time, the land had been occupied chiefly by their clergyman, Doct. *Chauncey,* as a *parsonage lot.* After his decease, and the settlement of Doct. *Goodrich,* it was occupied by the latter, under the society, when the lease in question was given. The plaintiffs failed to shew any legal title, and did not pretend to any, except what may be derived from the possession previous to the lease from *Hezekiah Talcott.* Was this possession such, as to create any title in the plaintiffs?

It is urged by the society, that their title was perfect, and indefeasible, having been gained by a possession of more than fifty years: and it is asked, shall the *acceptance* of a lease, defeat a title previously acquired? To this question, it seems proper to ask in reply, if the society had in reality acquired a title by possession, adverse to the title of *Talcott,* why did

*New-Haven,*
June,
1819.

Merwin
*v.*
Camp.

they accept the lease in question? If their title was already good, they had nothing to fear from Mr. *Talcott*, or any other pretender, and might, with honest pride, have refused the precarious tenure by which they consented to hold the land " *during the good pleasure of the lessor, and his successor.*" That a man should voluntarily consent to accept a lease of what is already his own, is not to be presumed, without strong evidence.

The law on the subject of titles claimed by possession, is undeniable. The possession of the plaintiffs, and occupation by their pastor, gave them no title, unless that possession was adverse to the true owner. For if the society, during this period, held the land by the license, and under the permission, of the lessor, and not adversely to him, instead of gaining any title, their possession was the possession of *Talcott*, under whom it was enjoyed. " As if a cottage has been built, in defiance of the lord, and a quiet possession had for twenty years, it is a good title against the lord ; but if it was built at first, with the lord's permission, or any acknowledgment had since been made, (though it was one hundred years since,) the statute will not run against the lord ; for the possession of a tenant at will, for ever so many years, is no disseisin. There must be a tortious ouster." (*Bishop* v. *Edwards, Bull. N. P.* 104.) What stronger acknowledgment could have been made by the plaintiffs, that they had obtained no title by possession, than the acceptance of this lease, by which they virtually disclaim any title in themselves, and recognize that of the lessor? By this acknowledgment, their previous possession is shewn not to have been adverse, but under a license from the true owner. Should *A.* take possession of *B.'s* land, and hold it more than fifteen years, and afterwards accept a lease from *B.*, by which he agreed to hold at *B.'s* pleasure, and surrender the premises when required ; would not such an act be conclusive evidence that the possession was never adverse, and destroy any presumption of title from that source ? The question is not, whether a lessee, by accepting a lease of land belonging to himself from a person without title, is thereby divested of his interest ; but whether the acceptance of a lease does not shew, that the previous possession was by the consent of the lessor ; and thus destroy the presumption of an adverse possession.

It must, therefore, be conceded, that the plaintiffs shewed no

New-Haven,
June,
1819.

Merwin
v.
Camp.

title in themselves, even if they could have been permitted to do it. They were, however, in possession, and claim that a peaceable possession is sufficient title against a wrong-doer. Whether the defendants did, or did not, gain a title, by the possession of this lessee, for more than fifty years, if they had none before, I forbear to consider ; because, in my opinion, the plaintiffs are not at liberty to set up a want of title in the defendants.

The defendants are heirs of *Hezekiah Talcott*, the lessor ; and consequently, if the plaintiffs could not have been permitted to deny his title, neither can they the title of the defendants.

The rule on this subject, is, that wherever one person enters upon land under the title of another, so as to constitute a tenancy, or the relation of landlord and tenant, the person so entering is not permitted to deny the title under which he has taken possession. Whether this relation of landlord and tenant, is created by indenture, deed poll, or parol demise, can make no difference in the result. If any distinction ever did exist, in this respect, between a lease by *indenture* and one by *deed poll*, no difference can exist in the reason of the rule ; nor is any such difference recognized by any modern authority. The acceptance of a lease, and entering into possession under it, or indeed, entering into possession under parol license of the owner, is a recognition of title by the tenant, equally obligatory on him, as though such recognition had been made by the most solemn instrument known to the law. The same principle of not permitting a party to deny a fact, which he has once acknowledged, is often recognized ; indeed, is of daily occurrence. The man who treats a woman as his wife, and lives with her as such, is responsible for her debts, though they were never married. In actions against sheriffs, and their deputies, it is sufficient to shew, that they have acted in that capacity. In actions against clergymen for *non-residence*, the acts of the defendant as parson, and receiving the emoluments of the church, are sufficient proof of his being parson, without other evidence of title. *Phil. Ev.* 171. So where the renter of the tolls of a turnpike gate, brought an action against the defendant for tolls, it was held sufficient evidence of the plaintiff's title, that the defendant had accounted with him in that capacity, though his right to the tolls was directly in issue ; and though the plaintiff had, in fact, no legal right to the tolls, his appointment having been invalid, he was held

*New-Haven,*
*June,*
*1819.*

Merwin
*v.*
Camp.

entitled to recover.   10 *East*, 104.   The reason of the rule is well stated in the following note.   " No man ought to allege any thing but the truth in his defence, and what he has alleged once is to be presumed true ; and therefore, he ought not to contradict it : for, as it is said in the 4 *Inst*. 272., *allegans contraria non est audiendus*.   2dly, As the law cannot be known till the facts are ascertained, so neither can the truth of them be found out, but by evidence : and therefore, it is reasonable that some evidence should be allowed to be of so high and conclusive a nature, as to admit of no contradictory proof."   *Co. Litt.* 352. *a. n.* 306.   The following cases shew the extent of the rule, and fully justify the positions which have been advanced.   *Brandter* d. *Fitch* & al. v. *Marshall*, 1 *Caines*, 394.   *Jackson* d. *Low* & al. v. *Reynolds*, 1 *Caines*, 444.   *Jackson* d. *Bleecker* v. *Whitford*, 2 *Caines*, 215.   *Jackson* d. *Van Alen* & al. v. *Vosburgh*, 7 *Johns. Rep.* 186.   *Jackson* d. *Sagoharie* & al. v. *Dobbin*, 3 *Johns. Rep.* 223.   *Jackson* d. *Vandeuzen* & al. v. *Scissam*, 3 *Johns. Rep.* 499. 504.   *Brant* d. *Cuyler* & al. v. *Livermore*, 10 *Johns. Rep.* 358. *Jackson* d. *Klein* v. *Graham*, 3 *Caines*, 188. *Jackson* d. *Smith* & al. v. *Stewart*, 6 *Johns. Rep.* 34.   *Dimond* v. *Enoch, Addis.* 356.   *Jackson* d. *Duncan* & al. v. *Harder*, 4 *Johns. Rep.* 202. *Jackson* d. *Kane* v. *Sternbergh*, 1 *Johns. Ca.* 153. *Embree* v. *Ellis*, 2 *Johns. Rep.* 119.   *Watson & Hartshorne* v. *Alexander*, 1 *Wash. Rep.* 340. 351.   *Cooke* v. *Clerk*, 2 *Selw. N. P.* 1312.

The only qualification of the rule, if indeed that can be called so, is, that the lessee may be permitted to shew, that the lessor's title has since expired, although he cannot be permitted to prove, what is attempted in the present case, that he *never had any*.   *England* d. *Syburn* v. *Slade*, 4 *Term Rep.* 683.   And with so much jealousy is any innovation regarded, on this salutary principle, that Lord *Ellenborough*, in a recent case, would not permit the tenant to shew, that the plaintiff's title to a copyhold had become forfeited to the lord, unless the defendant had solemnly renounced the title under which he entered, and commenced a fresh holding under another person : declaring, that the counsel " might as well remove mountains" as surmount the objection.   The same principle was recognized by the superior court, in *Holmes* v. *Kennedy*, 1 *Root*, 77. where a mortgagor, who had leased the mortgaged premises to the defendant, recovered in equitment, though the legal title was undeniably vested in the mortgagee.   It is much to be regretted, that any

attempt should be made to weaken the force of this rule, or to create exceptions to it. Not only is the tenant forbidden to dispute the lessor's title, but he is not permitted to acquire a title in himself during the lease. " It has been decided" says C. J. *Tilghman*, in lessee of *Galloway* v. *Ogle*, 2 *Binn.* 472. " and is the settled law of the country, that a tenant shall not resist the recovery of his landlord, by virtue of an adverse title acquired during his lease. This principle is founded on good policy, because it tends to encourage honesty and good faith between landlord and tenant." Judge *Yeates*, in the same case, is still more explicit. " No rule of law," says he, " is better settled, than that a tenant cannot dispute the title of his landlord. It is manifestly against good faith, and tends to great immorality. The tenant, by the practice of the *English* courts, cannot compel his landlord to interplead, unless where the claim of a third person arises by the act of the latter, subsequent to the lease."

It was decided by the court below, and is now insisted on by counsel, that after the expiration of the lease, at the death of Dr. *Goodrich*, the above rule no longer applied ; and the lessor must depend for a recovery entirely upon the strength of his own title. But whether the question arises before, or after, the expiration of the lease, can make no difference, provided the tenancy, created by the lease, continues to exist : for, during the existence of the tenancy, the rule applies, which secures the landlord against all attempts of the tenant to defeat his title. If the rule were, as contended for, it would be of little use ; it never would be applied in any action of ejectment, as this cannot be brought before the expiration of the lease ; but would only be applicable in contests for rent, between the lessor and lessee. To give any plausibility to this claim, it must be shewn, that the tenancy, or relation between landlord and tenant, ceases, as a matter of course, whenever the lease expires, although the lessee still continues in possession. From what source is such a principle derived, or where is it to be found ? I have always supposed, that the *tenure* by which a lessee held, after the expiration of his lease, was different from what it was before ; that it had become more frail and precarious ; that he was, indeed, a tenant *at sufferance ;* liable, at the election of the lessor, to be deemed a trespasser. But however feeble and precarious his rights, he is still a tenant ; and it becomes his duty honestly to sur-

New-Haven, June, 1819.

Merwin v. Camp.

New-Haven,
June,
1819.

Merwin
v.
Camp.

render the possession to him of whom he received it. Wherever the relationship of landlord and tenant exists, there the rule applies in full force : and it is wholly immaterial, whether the holding is by sufferance, or by virtue of a lease unexpired. In another part of the case above alluded to, Judge *Yeates* says, that " tenants who hold over their terms, will not be permitted to set up a title in a third person against their landlords, whose titles they had acknowledged, and held under, by their leases." *Handcock* v. *Shaen, Colles' Parl. Cas.* 122. is cited. The expiration of the lease, then, in my opinion, did not sanction the charge of the court, who considered that this put an end to all obligations of the tenant, and authorised him, after spying out some supposed defect of title, to bid his landlord defiance, and maintain his ground by the robust title of possession. *Brandter* d. *Fitch* & al. v. *Marshall,* 1 *Caines,* 394.

It is urged, in the next place, that the plaintiffs were *strangers* to the lease ; that the term created by it was vested in Dr. *Goodrich,* and not in them ; that they never were the lessees of *Talcott,* and are not subject to the obligations, which tenants are under, not to dispute the title of the lessee.

This objection is equally unfounded as the others to which I have adverted.

It should be observed, that previous to the lease, the use of the lot in question, was given by the plaintiffs to their pastor, Dr. *Goodrich,* and had he been deprived of this use by the lessor, the plaintiffs were bound to pay him an equivalent. The plaintiffs were the parties alone interested in the question of *Talcott's* title. Dr. *Goodrich,* therefore, prudently declined any interference in the dispute, and referred it to the society, who were the persons in interest. I say, he referred it, not because there is positive evidence of this fact ; but because such an inference is clearly deducible from the other facts before the court. The lease was never in his possession, although he was himself the lessee. On the contrary, it was received by the clerk of the society, the person who most properly represented them, and was for their exclusive benefit. We may, then, safely assert, that the lease was taken by the plaintiffs ; they were the persons, who negotiated with *Talcott* relative to the lease, and agreed upon its terms ; but as they had already put their clergyman in possession of the lot, and were bound to continue to him the enjoyment of it, the

lease, by their direction, was made out to Dr. *Goodrich;* instead of taking a lease directly to themselves, and then passing it over to him. Shall it be said, that the society by thus accepting a lease, made out by their direction, and taken solely for their benefit, are not to be regarded as recognizing the title of the lessor? Shall they be permitted, the next moment, to turn round, and disavow the title under which they have just consented the land should be held for their benefit? If Dr. *Goodrich* could not dispute *Talcott's* title, after accepting the lease, by what perversion of law, shall the society be at liberty to do it? More difficulty in point of proof, may sometimes exist, in making out the fact, that the *cestuy que use* has assented to an instrument made for his benefit, than in proving the assent of the lessee or grantee; but when such assent or acceptance is once proved, the same consequences follow in both cases. Thus, if a creditor, for whose benefit an insolvent debtor assigns his property, were to assent to such assignment, and accept dividends under it, he could no more claim that such assignment was fraudulent, and therefore void, than the trustee, who was made the instrument of distribution, and in whom the legal interest vested by the assignment.

The plaintiffs, therefore, are as much bound, not to dispute the lessor's title, both during the continuance of the lease, and after its expiration, as they would have been, had the lease been made directly to them, instead of being made to Dr. *Goodrich* for their benefit. The same reason for the rule exists in both cases. It does not depend on the acceptance of any formal or technical instrument; but where the holding is by a person, who entered into possession, recognizing another's title, there the rule applies; and whether such acknowledgment is inferred, from a written lease, parol declaration, or in any other way, makes no difference.

It is again contended, that although the above reasoning and conclusion are correct, still a new trial ought not to be granted, because the real question in the case is, whether there was not an existing tenancy, which would prevent any denial of the lessor's title. This, it is is said, was a question of fact, proper for the decision of the jury, and does not necessarily result from the acceptance of the lease; and it is claimed, that the motion is defective on this ground.

On this point I differ from the majority of the court.

I have already shewn, that where a tenant has accepted a

*New-Haven,*
June,
1819.

Merwin
*v.*
Camp.

<div style="margin-left-note">

*New-Haven,*
June,
1819.

Merwin
*v.*
Camp.

</div>

lease, and then holds over, after the term has expired ; the law presumes a continuation of the tenancy ; and consequently, that he cannot dispute the landlord's title any more after the expiration of the lease than he could before.   This was the view, undoubtedly, taken of the case, by the counsel, who presented the motion ; and is, in my opinion, correct.   If this is correct, nothing more was necessary than to shew, that the lease was *accepted* by the plaintiffs.   But if the holding by the plaintiffs, after the expiration of the lease, is not to be presumed in law, necessarily, to be in the character of tenants, no one can deny, that the facts would authorise a  jury to draw that conclusion ; and as the facts have never been submitted to their consideration, I would advise a new trial.

New trial not to be granted.