## LUCAS v. Doe ex dem PRICE.

1. Where an original *fi. fa.* was issued in the lifetime of the defendant, and returned unexecuted, an *alias* or *pluries fi. fa.* issued after his death, will not authorize the levy on, and sale of, lands of which the defendant died seized.
2. An administrator *cum testamento annexo*, who is appointed upon the failure of the executors to qualify, cannot execute a power to sell lands conferred upon the latter by the will.

This was an action of ejectment brought by the defendant in error, in the Circuit Court of Tallapoosa. The usual consent rule being entered into, the cause was tried on the plea of *not guilty*. On the trial, the defendant below excepted to the ruling of the Court. From the bill of exceptions, it appears that J. Doss purchased and obtained a patent for the premises in question from the United States; that a judgment was recovered against him in the Circuit Court of Tallapoosa, on which an execution issued; but previous to its return he died. The *fi. fa.* was returned unsatisfied, and after the intervention of a vacation, an *alias fi. fa.* was issued and returned without having been executed; whereupon a pluries *fi. fa.* was issued and levied upon the land in controversy, which was regularly sold to the lessor of the plaintiff, who received a Sheriff's deed therfor.

Doss made a will appointing two executors, and invested them with power to sell his real estate. The executors did not qualify as such, but an administrator was appointed *cum testamento annexo*, who disregarded the sale made by the Sheriff, and under the power contained in the testator's will, sold the premises in question to the plaintiff's lessor, and conveyed the same to him by deed. This was all the evidence adduced by the plaintiff.

The defendant proved that Doss, previous to the judgment against him, executed his bond to H. Young, conditioned to make him title to the lands in dispute, in consideration of one thousand dollars paid him by the latter. Young died in possession of the bond for titles, and the land agreed to be con-

veyed was, upon the petition of his administrator setting forth the insufficiency of personal assets to pay the debts of the intestate, decreed by the Orphan's Court to be sold in the manner provided by statute. At the sale of the commissioners, the defendant became the purchaser and received from them a deed. It was admitted that the defendant was in possession of the land at the commencement of the action and still retains it.— The sale under the decree of the Orphan's Court, was subsequent to the sale at which the plaintiff's lessor purchased.

The Court charged the jury, if they believed that the facts above stated were true, they must find for the plaintiff.

The jury returned a verdict for the plaintiff, and judgment being thereupon rendered, the defendant prosecuted a writ of error to this Court. .

HEYDENFELDT for the plaintiff in error. The issuance of the *alias fi. fa.* after the lapse of a vacation, was irregular and the process void. [4 Stewt. & P. Rep. 237.] The sale under the *pluries fi. fa.* passed no title to the purchaser; for the land, by the death of Doss, vested in his heir, [2 Bla. Com. Ch. 14,] and admitting the lien of the judgment to continue, it could only be enforced by suit in Equity, to which the heir would be a necessary party. The heir is even authorised to call on the personal representative to pay for lands which the ancestor has purchased. [2 Wms. Exors. 1039, 1080.] The doctrine of marshalling assets, forbids the sale of real property after the ancestor's death, under an execution against his estate. [Fonb. Eq. 284 a 302; 4 Ves. Rep. 538.]

The sale by the administrator *cum testamento annexo* of Doss, was void. 2 Wms. Exors. 623–5–6–8; Co. Lit. 113 a. Aik. Dig. 156, sec. 17, 450; sec. 14.]

Doss' bond to Young, conveyed to him the legal title. [1 Blac Com. 157; Roper v. Bradford, 9 Porter's Rep. 354; 5 Porter's Rep. 327-413.] The Orphan's Court had the right to order the sale of the land as Young's property, and the purchase of the plaintiff in error invested him with the title. '

No counsel appeared for the defendants.

COLLIER, C. J. 1. The *fieri facias* which issued previous

to the death of Doss, was certainly regular; but whether it would have been allowable after that event, to have executed it by levying on and selling the *real estate* of which he died the proprietor, it is unnecessary to consider. That it is competent to levy an execution on the *goods* of a defendant after his death, if previously issued, seems to be well settled. To this point Collingsworth v. Horn, [4 Stewart and Porter's Reports, 237,] is an authority. In that case it was determined, that where a writ of *fieri facias* has issued against an intestate in his lifetime, an *alias* and *pluries* might be issued thereafter, and *personal property* levied on and sold in order to satisfy the judgment; that the first writ created a lien in favor of the plaintiff, which was continued and perfected in virtue of the retrospection of the latter. In fact the several writs were regarded as a mere continuation of the process, which was necessary to complete the execution. But the reasoning employed by the Court in that case, has no application to the one before us. Here, if it were conceded that the original *fi. fa.* retained its vitality after the death of Doss, as against his "lands and tenements," yet as that writ originated no lien upon them, the *alias* and *pluries* cannot connect themselves with it, for the purpose of showing that they are regular; and it will not impart to them an energy which they do not intrinsically possess. The judgment itself operates a lien upon the real property; that is, it gives a right to have that property sold in order that it may be satisfied. By the death of the defendant his lands descend to his heirs, or vest as he may devise by will, and the mandate of an execution which directs the sheriff to make of them the amount of a judgment, must be wholly inoperative and void. In fact such a writ could never be executed in consequence of the death of the defendant, which has cast his estate upon other proprietors. And such is the law in respect to personal property, where an execution has not issued against the defendant in the judgment, while living; and it is only the lien of a *fi. fa.* regularly issued that legalizes an *alias* or *pluries* which bears teste after the defendant's death. [Woodcock v. Bennet, 1 Cow. Rep. 711; McCartney's lessee v. Read, 5 Ohio Rep. 221; Pratt v. St. Clair's heirs et al, 6 Ohio Rep. 238.]

2. It is not shown by the bill of exceptions, whether the devise by Doss to his executors was a mere naked power to sell his real estate, or whether it conferred a power coupled with an interest; nor does it appear whether the purpose for which a sale was to be made was defined by the testator. But the view which we take of the question of the right of the administrator *cum testamento annexo*, to sell the lands of his testator, makes it unnecessary that we should consider the extent of the power intended to be granted to the executors.

An executor *virtute officii* at common law, had no right to take possession of the lands of his testator. If they are devised they pass to the the devisee, who may enter upon and take possession—if undevised they descend to the heirs, who are entitled to the possession. If the real estate is required to pay debts of the testator, the executor may obtain an order for the sale of so much as is necessary, although it be in the possession of the devisee or heirs, or their assignee or disseissor. [Leavens v. Butler et ux, 8 Porter's Rep. 380.] The property of the executor in the personalty, is as plenary as was that possessed by his testator while living, controlled in its disposition however, either by law or the will. [1 Lomax's Ex'rs. and Adm'rs. 343, *et post.*]

Where executors are authorized by the will to sell land, it is said they are invested with a naked power, which it has been supposed would cease with the death of any one of them. But on this subject there is a want of harmony in the authorities; some of them maintaining that a devise to executors, with directions to sell passed the legal estate, and the power survived with the interest; some hold that a power conferred upon executors *nominatim* will not survive; while others are inclined to the conclusion that a devise *that executors shall sell land*, as well as a devise of *lands to be sold by executors*, invests them with an estate in the lands, and not merely a power. [1 Sugden's Powers, 141, *et post;* 1 Lomax's Ex'rs. and Adm'rs. 361, *et post.*]

It is entirely unnecessary to notice the contrariety of opinion on this point, or attempt to state what is the common law upon the various phases it may assume. We have a statute passed in 1806, which enacts that "The sale and conveyance of lands tenements and hereditaments, directed or devised to be sold,

by any last will and testament, shall be made by the executors or such of them as undertake the execution of the will, if no other person be therein appointed for that purpose, or if the person so appointed shall refuse to perform the trust, or die before he shall have completed it." [Aik. Dig. 450.] Whether this act is introductive of a new rule of law, or is merely declaratory, we will not inquire. It is explicit in its terms, and provides, 1. That a direction or devise to sell lands, shall be executed by the executors, unless some other trustee is appointed: 2. If more than one executor is appointed, it authorizes such of them as qualify to sell: 3. And if the trustee, or either of the executors, die before a sale, the survivor shall execute the trust.

The powers of an administrator, with the will annexed, are the same as those which pertain to an executor *as such*, [1 Lomax. Ex'ors. & Adm'rs.] and the question is, whether a devise to sell land is a trust extraordinary, or comes within the appropriate functions of an executor. From what has been said, it would seem that it is the former. This question was largely considered in *Conklin v. Egerton's Adm'r.* [21 *Wend. Rep.* 430.] There, as in the case before us, the inquiry was, whether an administrator *cum testamento annexo* could execute a power conferred upon the executor, to sell and convey real estate. The conclusion of the Court was, that a testament concerned the personal property merely, and though by statute it was allowable to make a will of the realty, it did not follow that the person appointed to execute it would, as to all its provisions, be regarded as an executor. He might be considered a mere *donee of a trust power*, and where he was authorized to sell lands he would be a trustee, and could not be charged as an executor for any thing in relation to the trust. That an administrator with the will annexed, who succeeded only to the executorial functions of his predecessor, could not, in virtue of his representative character, execute an independent trust. [See also Judson v. Gibbons, 5 Wend. Rep. 224; Wills v. Cowper, 2 Ham. Rep. 124.] And such was the decision in Conklin v. Egerton's Adm'r.; although a statute of New York provides, that " in all cases where letters of administration with the will annexed, shall be granted, the will of the deceased shall be observed and performed; and the administrators of

. such will shall have the rights and powers, and be subject to the same duties, as if they had been *named executors in such wil'.*"

In the Lessee of Moody et al. v. Van Dyke et al. [4 Binney Rep. 31,] it was determined, that where there is a naked power to executors to sell, and they renounce, administrators *cum testamento annexo,* have not at common law authority to sell, although the object of sale be the payment of debts. To these cases, many citations might be added; but they are so full and satisfactory in their reasoning, and so well supported by the authorities referred to, by the learned judges who adjudicated them, that we do not deem it necessary to amplify this opinion.

The view we have taken, shows the title of the plaintiff to be too defective to sustain his action. This being the case, we will not inquire into the validity of the title set up by his adversary, as he can derive no aid from it.

We have only to declare that the Judgment of the Circuit Court is reversed and the cause remanded.