# SPYKER v. SPENCE.

1. The President of a banking corporation, the charter of which does not confer the power, either expressly or incidentally, is not authorized, without the permission of the directors, to whom are intrusted *the management of the concerns of the institution*, to stay the collection of an execution against the estate of one of its debtors; and if a sheriff omits to levy an execution, in consequence of such an order from the President, it will not become dormant, so as to lose its lien.

Writ of error to the Circuit Court of Talladega.

This was an action of trespass, at the suit of the plaintiff in error, to recover damages of the defendant, for taking possession of the storehouse and goods of the former. The defendant pleaded "not guilty," and several special pleas, justifying the trespasses charged, as sheriff, in virtue of a writ of *fieri facias*, &c. The cause was tried by a jury, who returned a verdict in favor of the defendant, and judgment was rendered accordingly. On the trial, the plaintiff excepted to the ruling of the Court. It is shown by the bill of exceptions, that the plaintiff proved the taking of the goods by the defendant, out of his possession, and their value. The defendant offered evidence tending to show that he was sheriff, at the time of the seizure; and that he levied on the goods under an *alias fi. fa.*, issued from the County Court of Montgomery, on the 23d day of February, 1842, and founded on a judgment rendered by that Court, at its May term, in 1841, against Cummings & Spyker. That an original *fi. fa.* issued on that judgment, on the 9th June, 1841, and was placed in the hands of the sheriff of Montgomery; at that time, the goods levied on were in the possession of Cummings & Spyker, in Montgomery, the execution was returned without any money being made thereon. The defendant also offered to prove, that on the 1st April, 1842, a proposition was submitted by Cummings & Spyker to the plaintiff in execution, to take the goods in the defendant's possession, as shown by the letters of C. & S., the letter of the plaintiff, and the deposition of the Cashier of the Branch Bank—all of which make part of the bill of exceptions.

The questions presented for the decision of this Court may be thus stated: 1. The plaintiff objected to each of the interrogatories proposed by the defendant to the witness, Whiting, (the Cashier of the Bank,) as leading and inadmissible, and the answers made by the witness to the same, because the commissioners authorized to take the deposition had not regularly certified the same. 2. Plaintiff also objected to the reading of a certified copy from the minutes of the proceedings of the board of directors, of the proposition submitted to the Bank by Cummings & Spyker, although the same was vouched by the deposition of the Cashier of the Bank, (of which it made a part,) to be a true copy of a genuine paper in possession of the directory. Both these

objections were overruled, and the evidence allowed to be read to the jury. 3. Evidence was adduced to show, that the execution which issued upon the judgment in favor of the Bank against Cummings & Spyker, on the 9th June, 1841, was returned by the sheriff of Montgomery, indorsed thus, "stayed by order of John Martin." There was no evidence of the authority of Martin to control the execution, unless the fact of his being the President of the Bank conferred such a power. Upon this point the jury were charged, "that to make the stay of the execution operative against the Bank, the sanction of the directors of the institution was requisite; that the President of the Bank, merely as such, had not the authority to control the execution, and without further proof of authority, express or implied, it could not be legally inferred; and if the President had no authority, it would be the same as if not ordered at all : and the lien which may have attached would continue operative." 4. It was proved that the proposition of Cummings & Spyker, and to which the plaintiff assented by his letter, was rejected by the Bank, and some days afterwards, when it was ascertained that the Bank could find a suitable purchaser for the goods proposed to be given up to it, the directory took up the proposition and accepted it, with some modifications, without a renewal of the plaintiff's assent. Upon this point the jury were charged, that if they believed " the proposition was made to the Bank by Cummings & Spyker, and accompanied by the proposition of plaintiff, was, when first acted on by the board, rejected, and afterwards was taken up, acted upon and accepted by the board, the same would not be binding on the plaintiff, unless he had subsequently assented to the same, though he may not have communicated such assent to the Bank. 5. There was evidence tending to show that the defendant sold a portion of the goods levied upon, before the plaintiff's letter to the Bank was written; and the plaintiff, by way of rebutting testimony, offered to prove the value of such goods, but the defendant objected, and his objection was sustained.

L. E. Parsons and E. W. Peck, for the plaintiff in error, made the following points : 1. If the defendant was a trespasser in levying on the goods, their subsequent sale by the Bank, though made with the assent of the plaintiff, will not bar a recovery, but will mitigate the damages merely. [7 Porter's Rep. 466; 8 Id.

191 ; 7 Johns. Rep. 254 ; 10 Id. 172.]   This being the law, the evidence to show the value of the goods sold by the defendant, by way of rebutting testimony was clearly admissible.   2. The objections to the deposition of the Cashier of the Bank, were well taken, and should have been sustained.   3. The copy of C. & S.'s proposition, was at most a copy, of no higher grade of evidence than hearsay ; the original, which it is to be inferred was in writing, if it could avail anything should have been adduced. 4. Conceding that the direction of the sheriff of Montgomery to return the execution, was made without a sufficient authority, and still it is insisted that there was no operative lien as against the plaintiff, who purchased *bona fide*, before the levy of the *alias fi. fa.* of the vendee of C. & S.   [8 Johns. Rep. 348 ; 9 Id. 132 ; 2 Johns. C. R. 284 ; Horton v. Smith, *ante;* 6 Ala. Rep. 891.] 5. The President might, in virtue of his office, have given the order to the sheriff, to stay proceedings upon the execution, and return the same unsatisfied.   [1 Ala. Rep. 388 ; Id. 398.]   The charter requires him to take an oath to perform his duties faithfully, and he is required to give a bond to that effect ; in the absence of all proof upon the point, the reasonable inference is, that if his powers as President, did not authorize him to control the execution, the directory had regularly conferred such authority.   In proceedings against clerks, sheriffs, &c. for official neglect, the law presumes that they have done their duty, until the contrary is shown ; and will not the same reasonable presumption be indulged in respect to the President of a Bank.   6. The execution then became dormant by the order to the sheriff of Montgomery to stay proceedings upon it.   [5 Ala. Rep. 44 ; 2 Johns. Rep. 422 ; 8 Johns. Rep. 18, 41, 348 ; 9 Id 132 ; 11 Id. 110 ; 15 Id. 429 ; 17 Id. 274 ; 2 T. Rep. 596 ; 4 East's Rep. 523 ; Salk. Rep. 720 ; 1 Ld. Raym. 251 ; 5 Mod. Rep. 377 ; 7 Id. 37 ; 1 Esp. Rep. 205 ; 1 Camp. Rep. 333.]   7. The lien of the first *fi. fa.* was lost by the failure to levy it in Montgomery ; consequently the *alias fi. fa.* to Talladega, could not relate back so as to defeat the sale of the goods made in the *interim* by Cummings & Spyker.   [5 Dana's Rep. 273.]   8. The proposition of C. & S. with the assent of the plaintiff was virtually withdrawn by its rejection ; to make it a binding contract afterwards upon the plaintiff, he should have had notice, that he might ratify it, if necessary ; this was more especially necessary as the proposi-

tion was accepted with modifications.    [9  Porter's Rep. 191 ; 5
Ala. Rep. 623.]   The plaintiff had the right to stand on the pre-
cise terms of his offer to the Bank, and nothing more could be
required of him.  [5 Ala. Rep. 388.]   9. Corporations are charge-
able with the acts of their agents or servants.    [7 Mass. Rep.
169;  7 Cranch's Rep. 299 ;  12 Johns. Rep. 227 ;  14 Id.  118;
14 East's Rep. 6.]

A. F. HOPKINS and  W. P. CHILTON, for the  defendant.   Con-
ceding that the President of the Branch Bank was authorized to
direct a stay of execution, and it is contended that the lien was not
discharged thereby ; to give to the delay that effect, it must have
been fraudulent.   [5 Ala. Rep. 43 ; Id. 623.]   The vendee of
the firm of Cummings & Spyker was one of the firm, and of
course informed of the unsatisfied judgment in their favor; and
the plaintiff who purchased from him, is merely substituted to
the situation he occupied.

It must be intended that the original *fi. fa.* was returned at the
proper return day, " delayed by John Martin," [4 Ala. Rep. 534;
6 Id. 248 ;] and the return is inoperative for all purposes.   To
give it effect, it should at least have been shown that the execu-
tion was stayed by John Martin, *the President of the Bank*, in
his official character, and that he was authorized to give such
direction to the sheriff.   Being President did not invest him with
such authority.   [Clay's Dig. —, §§ 4, 5 ; 11 Mass. Rep. 94 ; Id.
288 ; 14 Id. 180 ; 17 id. 29 ; Id. 97 ; Id. 505; 12 Serg. & R.
Rep. 256 ; Ang. & A. on Corp. 243 ; 6 Peters' Rep. 51 ; 8 Id.
16.]

In procuring a sale of the goods to be made to the plaintiff in
execution, and ratifying it, (as the jury have found,) the plaintiff
surrendered whatever right he had to them, or damages conse-
quent upon the levy.   The pleas merely put in issue the fact of
the *fi. fa.'s* having been in the sheriff's hands as alledged ; the
replications do not set up the delay as a matter that avoided
the liens.   [3 Porter's Rep. 43 ;  7 Id. 167; 3 Ala. Rep. 382,]

As to the goods  sold by the plaintiff, they are specifically set
out in the pleadings, and proof of their value, if material, should
have been part of his evidence in chief.

The copy of the proposition of C. & S. to the Bank, was not
used as evidence in the manner supposed.   The proposition con-

tained in the certified copy of the minutes of the directory was verbally made by C. & S.; the original, or first of the several propositions was in writing, and produced in the Circuit Court. Upon this point, there is no error. 1. Because the evidence was upon a collateral inquiry. 2. Because the second proposition was merely verbal, and the copy merely a transcript of the minutes of the board, upon which it was entered; and, 3. Because the agreement to which all the parties assented, and which has been executed, was before the Court.

They denied the application of the case cited from 5 Dana, and insisted that later adjudications have explained it, so as to show that it was not an authority favorable to the plaintiff.

COLLIER, C. J.—The act of 1807 declares, that no *fieri facias,* or other writ of execution shall bind the property of the goods against which the same is sued forth, but from the time such writ shall be delivered to the sheriff, &c. to be executed. [Clay's Dig. 208, § 41.] Under this statute it has been held, that the lien attaches as soon as the execution is received, upon the personal property of the debtor within the county, and it will bind goods that may be brought within its influence, while it continues operative. [Hester, et al. v. Keith & Kelly, 1 Ala. Rep. N. S. 316; Wood v. Gary, et al. 5 Id. 43.]

When the lien once attaches, it cannot be lost without some act with which the plaintiff is chargeable, or neglect which the law makes prejudicial to his rights. [Wood v. Gary, et al. *supra.*] Certainly the removal of the property to another county, without the consent or connivance of the plaintiff, will not impair it. The lien, it is true, does not divest the property of the debtor; he may (certainly until a levy has been made,) pass the legal title to a third person, by a sale, subject however to be defeated by a subsequent levy, and sale, under the same, or another execution issued upon an operative judgment, regularly continued and connected therewith. [Addison, et al. v. Crow, et al. 5 Dana's Rep. 273; Claggett v. Foree, 1 Id. 428; Collingsworth v. Horn, 4 Stew. & P. Rep. 237; Lucas v. Doe ex dem. Price, 4 Ala. Rep. 679; Hill v. Slaughter, 7 Ala. Rep. 632.]

These citations abundantly show, that the mere neglect of the sheriff to levy a *fi. fa.* will not have the effect to deprive the plaintiff of the rights which accrued in consequence of its delivery to

be executed. In the case ˙ cited from 5 Ala. Rep. it was said, that "to render an execution *dormant* there must be some act of the plaintiff inconsistent with the pursuit of the defendant, by execution to obtain satisfaction of the judgment." In the present case, the goods on which the defendant is charged to have wrongfully levied in Talladega, were in Montgomery, and in the hands of the defendant in execution when the original *fi. fa.* was delivered to the sheriff. This being the case, it is material to inquire whether the sheriff was authorised to return the execution without levying it, or attempting to make the money thereon.

The charter of the Branch of the Bank of the State of Alabama at Montgomery, provides for an election by the General Assembly, annually, of a President, and twelve directors *to manage the concerns of the institution.* To carry out this general purpose, the President and Directors are *jointly* invested with certain enumerated powers ; the former is required to preside at all meetings of the directory ; is authorized to move for judgment against a defaulting debtor, after the service of notice, and certify that the debt in question is *bona fide* the property of the bank ; he is required to co-operate with the Governor, &c. in issuing State stock, to create an additional capital, and to sign notes directed to be issued by the President and Directors. [See Clay's Dig. 90 to 94.] These are the only, or principal powers and duties conferred upon the President, disconnected with the directory; all his expressly delegated powers are as a member of the directorial board.

The rights, authorities, and mode of transacting the business of a corporation, depend, not upon the common law, but upon the legislative act by which it was created, and where that is silent, upon the principles of interpretation, and doctrines of the common law. But this latter source of power cannot control by implication, an express provision of the charter, or create an authority to do that which is not necessary to give effect to the intention of the Legislature ; or confer upon a particular member or officer, the right to do that which the Legislature have made several persons, or a board of directors, competent to perform. [Fleckner v. U. S. Bank, 357-8-9.]

The President and Directors of our State Banks are but the agents of the State for the purpose of managing the affairs of the corporation ; the charters of incorporation are in some sense let-

ters of attorney under which they act, and are not only enabling, but are also restraining acts. [Collins v. The Br. B'k at Mobile, 7 Ala. Rep. —; Salem Bank v. Gloucester Bank, 17 Mass. Rep. 29, 30; Lincoln and K. Bank v. Richardson, 1 Greenl. Rep. 81.]

A board of directors, authorized to conduct the affairs of the company, may empower the President and Cashier to borrow money, but the President, under an authority thus conferred upon *the Cashier and himself* cannot borrow money. [Ridgway v. Farmers' Bank of B. Co. 12 Serg. & R. Rep. 256.]    It has been held that the President has not, *ex officio,* authority to transfer the property or securities of a Bank; but must have express authority to that effect, from the corporation at large, or the directors, as the case may be. [Hallowell & A. Bank v. Hamlin, et al. 14 Mass. Rep. 180; Hartford Bank v. Barry, 17 Id. 97.] Nor can the President or Cashier charge a bank with any special liability, for a deposite contrary to its usage, without the previous authority or subsequent assent of the corporation. [Foster, et al. v. Essex Bank, 17 Mass. Rep. 505.] In Fleckner v. The United States Bank, *supra,* it was said that *the Cashier is the executive officer,* through whom, and by whom, the whole monied operations of the Bank, in paying or receiving debts, or discharging or transferring securities, are to be conducted. The inducements to a transfer by the Cashier, need not appear; but the Courts will presume the transfer to have been properly made by the Cashier, in the absence of proof to the contrary. This presumption however is not conclusive, but may be impeached. [Everett, et al. v. United States, 6 Porter's Rep. 166.] *Again;* the Cashier of a bank has a general authority to suspend the collection of notes under protest, and to make such arrangements as may facilitate that object, and to do any thing in relation thereto that an attorney might lawfully do. [Bank of Penn. v. Reed, 1 Watts' Rep. 101.] But an agreement by the President and Cashier of a Bank, that an indorser shall not be liable on his indorsement, is not binding on the Bank. [Bank of U. S. v. Dana, 6 Peters' Rep. 51; Bank of Metropolis v. Jones, 8 Id. 16.] We have made these citations to show that the Cashier is the executive officer of the Bank, and that his acts, if apparently within the regular course of business, in respect to the collection of its debts, will be presumed to be within the scope of his official authority, until the contrary is shown.

Spyker v. Spence.

But such an implication cannot be indulged to sustain the direction by the President to the sheriff of Montgomery, in the present case; for although he is, in connection with the directors, invested with "the management of the concerns of said Branch Bank," yet, without their co-operation, he can only act in those cases where the charter confers upon him a sole agency; or where an authority may be deduced from the "doctrines of the common law," or "the principles of interpretation." We have seen that the act of incorporation does not devolve upon the President the duty of expediting or delaying the collection of the debts due the bank, and such a power is not deducible from any other source. Conceding therefore, that "John Martin," in his official capacity, ordered the original *fieri facias* to be returned unsatisfied, the lien which it acquired was not impaired; because the order was unauthorized. The *alias fi. fa.* was issued in the vacation which succeeded the term to which it was returnable, and consequently drew to it the lien acquired by the original, so as to overreach and avoid any transfer of the goods of the defendants therein, made in the interval.

This view is decisive to show, that the plaintiff had no right to the goods levied on by the defendant, as against the plaintiff in the execution, if they were in Montgomery county while the original *fi. fa.* was in the sheriff's hands. The jury have affirmed that such was the situation of the goods, or that the plaintiff assented to the acceptance by the directors of the bank, of the proposition of Messrs. C. & S.; for upon one of these hypotheses, or both, their verdict must have been found, as they seem to have been the only *primary* questions of fact referred to the jury. And whether the verdict was influenced by the solution of one or both these questions, no injury could possibly have resulted from the ruling of the Circuit Court. It will then be unnecessary to consider the other questions raised upon the bill of exceptions, as their decision favorable to the plaintiff, would not have entitled him to a verdict. The judgment is therefore affirmed.