## PERKINS vs. LEWIS et al.

[BILL IN EQUITY, BY LEGATEES, AGAINST EXECUTOR'S SURETY.]

1. *Devise to executors, in trust to sell and divide proceeds, creates personal trust, and not official duty.*—A devise to executors, "hereinafter named, for the use and benefit of" specified legatees, in trust to sell, with special directions as to the terms of sale, and to divide the proceeds of sale, when collected, among the legatees, creates in the executors a personal trust only, and does not impose on them an official or executorial duty; consequently, the sureties on their official bond as executors are not responsible for their failure to pay over the proceeds of sale according to the directions of the will.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. J. Q. LOOMIS.

THE bill in this case was filed, in November, 1866, by William F. and Mary A. Lewis, Jacob and Margaret Dansby, and Bradley Ridgway, against William Perkins, as the sole surviving surety on the official bond of Moses Hubbard and John M. Bell, as executors of the last will and testament of Mrs. Rebecca Bell, deceased; and sought to charge the defendant, as such surety, on account of the default of the said executors, in failing to pay over to the complainants their respective portions of the proceeds of sale of certain lands, as hereinafter more particularly stated. The testatrix died, in said county of Greene, in 1843, after having duly executed her last will and testament, which was there admitted to probate, on the 14th October, 1843, and of which said Moses Hubbard and John M. Bell were therein appointed the executors. The second item of the said will, which is the only item involved in the controversy in this case, was in the following words:

" I desire and direct, that a lot of twenty acres be laid off, so as to include my present residence and the strip left between the lands of said Clark and the aforesaid lot be-

42

queathed to my daughter Martha, and so as to include five acres of my timbered land. This lot I hereby devise and bequeath to my executors, hereinafter named, for the use and benefit of my beloved daughter, Agnes Pickens, and of my beloved grandchildren, Mary Ridgway, Bradley Ridgway, and Margaret Ridgway, children of my deceased daughter, Mary Ridgway; the said Agnes to have one moiety, and the said children of my daughter Mary to have the other moiety. This lot of land is to be sold by my executors, hereinafter named, as soon as the same can be sold for a reasonable and fair price, and conveyed by them to the purchaser. If sold on credit, in addition to taking good personal security, my executors are to secure the payment of the purchase-money by a mortgage on the premises, with a power of sale. When said lot is sold, and the money collected, or if (and when) any portion of it is collected, it is to be divided into two shares; one of which is to be paid over to my daughter, Agnes Pickens, to belong absolutely to her, and to do as she pleases with the same; and the other share is to be held by my son, John M. Bell, as hereinafter directed, for the use and benefit of my said three grandchildren, children of my deceased daughter, Mary Ridgway."

The executors named in the will qualified, and gave bond, with William Perkins, William A. Bell, and Asa White, as their sureties. The bond was dated the 14th October, 1843, and was conditioned that the said John M. Bell and Moses Hubbard " shall well and truly perform all the duties which are, or may be, required of them as such executors." The executors laid off the lot according to the directions of the will, and sold it, in March, 1845; and in December, 1852, Moses Hubbard, then the sole surviving executor, collected the notes which had been given for the purchase-money, and entered satisfaction of the mortgage. Said Hubbard died in May, 1861, insolvent, having never paid over to the complainants their moiety of the proceeds of sale. White and William A. Bell both died, insolvent, before the filing of the bill in this case; and the complainants prayed an account against Perkins, as the sole surviving surety, and a money decree for whatever balance might be ascertained

to be due to them arising from the sale of the land. The defendant demurred to the bill, and assigned the following (with other) causes of demurrer : "1st, that the failure of said Hubbard to pay over said sum of money to said complainants is no breach of the bond given by him and said John M. Bell, as executors of said Rebecca Bell, for which this defendant, as one of their sureties on said bond, can be held liable in this suit; 2d, that, on the facts stated in said bill, this defendant is not bound, as one of the sureties of said executors on their said bond, to account for the said legacy to the complainants, or either of them." At the December term, 1866, the chancellor rendered a decree for the complainants, " by consent, but without prejudice to the defendant's demurrer," and ordered the master to state an account between the parties ; and on the coming in and confirmation of the master's report, at the June term, 1867, he rendered a final decree in favor of the complainants, for the several amounts ascertained to be due to them respectively. The chancellor's decree, and his failure to sustain the demurrer to the bill, are now assigned as error.

W. P. WEBB, and MORGAN & JOLLEY, for appellant.— 1. The devisees took personally, as trustees, and not officially, as executors. If they had taken in their official capacity, as executors, the rights, powers, and duties of each, in relation to the subject of the devise, would have been precisely the same; yet the devise makes John M. Bell the legal custodian and trustee of one half the fund arising from the sale, to the entire exclusion of his co-executor. Again, if they had taken as executors, and not as trustees, an administrator with the will annexed would have had precisely the same power to execute the trust; yet it is evident that such administrator would have had no power whatever over the land, unless a sale of it was necessary to pay debts. The following authorities show the proper construction and effect of the devise : *Judson v. Gibbons,* 5 Wendell, 227 ; *Dominick v. Michael,* 4 Sandford's (N. Y.) S. C. R. 400 ; *Ross v. Barclay,* 18 Penn. St. (6 Har.) R. 179.; *Lessee of Lewis v. McFarland,* 9 Cranch, 151 ; *Leavens v. Butler,*

8 Porter, 389–402 ; *Hitchcock's Heirs v. U. S. Bank of Penn.*, 7 Ala. 437 ; 10 Gill & John. 27.

2. If the executors took as trustees only, and not in their official capacity, a surety on their official bond is not responsible for any breach of trust on their part.—4 Ala. 682 ; *Perkins v. Moore*, 16 Ala. 14 ; 5 Wendell, 227 ; 21 Wendell, 430 ; 25 Wendell, 231.

BLISS & SNEDICOR, and W. COLEMAN, *contra.*—The devise vested in the executors officially, and not personally. They would have had no power over the land, and could not have interfered with it for any purpose whatever, if they had not first qualified as executors. Their bond was conditioned as the statute then required, and bound their sureties for any *devastavit* committed by them in relation to the land, as well as for any other default on their part.—*Speed's Executors v. Nelson*, 8 B. Monroe, 503 ; *Swope v. Chambers*, 2 Grattan, 319 ; 1 Marshall, 491 ; *Davis v. Davis*, 10 Ala. 299 ; *Perkins v. Moore*, 16 Ala. 15 ; Clay's Digest, 221, § 3 ; *ib.* 229, § 44.

BYRD, J.—The decree settling the rights of the parties was rendered upon consent, without prejudice to the demurrer of appellant. This relieves us from reviewing any questions, except those raised by the demurrer. The point upon which the case turns is as to the liability of appellant, as surety on the bond of the executors of the will of Rebecca Bell, deceased ; and this involves the construction of the second clause of the will, which is as follows : [See the item quoted above.] It is contended on the one hand, that the devise to the executors, with a power of sale, imposed upon them the performance of the trust as executors, and that their failure in this respect made them and their sureties liable for such failure. The other side insists, that the devise to the executors was merely a designation of persons who were to take the legal estate to the land, in trust for the uses declared, and imposed a personal trust, and not an official one ; and that therefore their sureties are not liable for any default of their principals in the per-

formance of the duties prescribed by the above recited
clause of the will.

Our statutes, at the time the bond was given, required
the judge of probate to take a bond, in double the amount
of the value of the real and personal estate, and subjected
the land to the payment of the debts of the decedent.
The executors, under the statute, could hold the land for
the payment of debts ; and upon a sale for that purpose,
under an order of court, they and their sureties might be
liable for the proper application of the proceeds.   But
would the latter be responsible, for any loss occurring from
the acts or omissions of the former, in the execution of
the trusts declared in the second clause of the will? . I
will proceed to notice some of the adjudications touching
this interesting question.

In the case of *Judson v. Gibbons,* (5 Wendell, 228,) it
appears that the will devised real and personal property to
the executors, *upon trust* to take care and manage the same,
and invest the income for the best interests of the estate,
until the youngest child became of full age, and then divide
the same among the children of the testator ; and as to
the shares of his daughters, upon further trust during their
lives.   The court held, that the estate thus devised, " at
the testator's death, belonged to the executors named *as*
*trustees,* and not as executors.   The executors, indeed, were
entitled to it in preference, so far as it was necessary for
the payment of debts ; but the offices of executor and trus-
tee are not necessarily blended."

In *Conklin v. Egerton's Adm'r,* (21 Wendell, 432,) the will
empowered the executors named to sell and dispose of real
estate, for the most money that could be gotten for the
same, and to execute conveyances in fee simple, and to
divide the money arising from the sale among the sisters,
nephews, and nieces of the testator ; the land having been
devised to them in a previous clause of the will.   The
question arose, whether an administrator *cum testamento
annexo,* after the death of the executor, was authorized to
execute the power conferred upon the executor, under a
provision of a statute which·declared, that " the adminis-
trators of such will shall have the rights and powers, and

be subject to the same duties, as if they had been named executors in such wlll." The court held, that they were not, on the ground that the power, and its exercise, was a personal trust, and was not attached to the executorial office ; and that the statute only imposed such duties upon administrators as the will or the law imposed upon the executors as such. Mr. Justice Cowen, delivering the opinion of the court, reviews at some length, and with his usual accuracy and research, the authorities touching this subject. In speaking of the power of the executor under the will in that case, as to the land and personal property devised to the sisters, nephews, and nieces of the testator, he says: " As the depositor and distributor of a common fnnd, arising from the avails of real and personal estate in his hands at the same time, or, as he really is, the mere instrument of a devise entirely distinct from the personalty, his acts, in respect to the land, were not, and could not be, performed in his capacity as executor ; *quoad hoc,* he was an agent, acting under a private power of attorney. It is the same thing as if the testator had drawn up separate wills, the one of his personalty, naming Hart as executor, and the other of his land, naming him as the man to make a sale." He assigns a reason why the administrator with the will annexed is not authorized by law to execute a power to sell land, and perform the trusts conferred on an executor by the will, in the following language : " My opinion is, both upon the words of the section (of the statute) in question, and its intention as derivable from its history, its reason, and context, that the legislature did not mean to confer on an administrator with the will annexed any greater power than they have provided that he shall give due security to perform. This, in no part of the revised system of administration, extends beyond the personal estate, or assets arising from *a sale of real estate for the payment of debts.*"

The statute law of this State requires the judge of probate to take bond, in a penalty equal, at least, to double the estimated value of the real and personal property of the estate, conditioned to perform all the duties which are, or may be, required by law as such executor or administrator.

Perkins v. Lewis et al.

This was substantially the law when the bond was given in this case, and its condition is in conformity thereto. Under the provisions of the statute law of this State, I have no doubt that an executor would be liable for the proceeds of a sale of lands, sold under a power given by the will, for the purpose of paying debts, or sold by an order of court for the same purpose, although the land is devised in trust to him for other purposes. This is entirely consistent with the view taken in the case cited from 21 Wendell. The fact that the statute requires an executor to give bond in double the amount of the real, as well as the personal property, does not necessarily make the executor as such, and his sureties, responsible for the faithful execution of personal trusts imposed on the former by the will. And the main question, therefore, in this case, is, whether the devise of the lot of land to the executors, for the use and benefit of Mrs. Pickens and the grand children of the testator, to be sold by the executors, and conveyed by them to the purchaser, and the proceeds of the sale, when collected, to be divided as directed, constitutes a trust *extraordinary*, personal to them, or is one that is comprehended within the ordinary duties of an executor or personal representative.

The case last cited came again before the court of errors, and the same questions were again considered.—*Vide* 25 Wendell, 224.

In *Holmes v. Cock*, (2 Barb. Ch. 426,) it appears that the executor had fully administered the personal estate, and the only property unadministered was real estate, which was devised to be sold after the death of the widow, who was still living, and the proceeds of sale to be distributed among the residuary devisees. The surrogate had ruled the executor to give security for the faithful discharge of his trust as executor, and he appealed. Chancellor Walworth held, under the statutes of New York, that " the statute authorizing the executor to bring the proceeds of real estate, sold by virtue of a power contained in the will, into the surrogate's office for distribution, is only for the benefit or protection of the executor, and it does not require the executor to place such proceeds in the surrogate's hands;"

and further, that the bond required by law "is a bond for the benefit of every person interested in the estate ;" and that "the whole amount recovered against the sureties would have to be distributed among all those who had suffered by the executor's mal-administration of the funds."

There was no statute in this State, in 1843, when the bond was given upon which this suit is founded, similar to the one referred to by Chancellor Walworth. Yet, in a case where a will merely empowered an executor to sell lands for distribution among certain persons, it may be that, under the law at the time the bond in this case was given, the sureties would be responsible for any default of the executor in the administration of the proceeds of the sale, or to creditors for any mal-administration thereof.

In the case of *Dominick v. Michael*, (4 Sandf. 374—399,) where the words of the will were as follows : "I authorize my executors, *hereinafter named*, to sell and dispose of any part of my real estate according to their discretion, either at public or private sale, and to give sufficient deeds or conveyances of the same in fee simple to the purchaser or purchasers thereof," the court held that "the power thus to divide or sell may indeed be given to executors, but in its execution they act not at all as executors, but wholly as devisees in trust; and it is therefore no more transmissible to an administrator with the will annexed, than had it been given to trustees, having no other duty to perform under the provisions of the will." *   *   * "And as the proceeds of the land, when sold, are to be distributed amongst those to whom the lands themselves are devised, it is as devisees and owners that they receive them, and their respective shares can with no more propriety be denominated legacies than had the sale been made by themselves instead of the executors."—1 Jacob & Walker, 189 ; 4 Mad. 44. And Mr. Justice Duer, in delivering the opinion of the court, which is distinguished for its clearness and profound research, further said, in speaking of the power given to an executor to sell lands : " But, where it is given to executors by their individual names, or, as in the present will, to executors hereinafter named, it is certain that it vests in all who are thus named, whether they prove the will or not, by

Perkins v. Lewis et al.

force of the will itself; and that a devise of the power is then construed to take effect precisely in the same manner as a devise of the legal estate." And the court further held, that if a single proposition may be regarded as established beyond controversy, it is, "that an express power to dispose of lands, no matter for what purpose, or by what instrument it is created, is limited to the persons or person to whom it is given, and can never be exercised by the representatives, real or personal, unless they are expressly or impliedly designated as donees of the power." Consequently, the devise of such a power does not attach to the official or executorial character, but to the person of the executor *as a trustee.* The power is not transmissible with the office of personal representative of the estate of the testator. And whether the executor could execute such a power after his resignation of the office of executor, and the transfer of the administration of the estate to another, it is not necessary now to express an opinion. The decision in the case of *Dominick v. Michael* was made with reference to the same statute upon which the decision was made in the case of *Conklin v. Egerton's Adm'r, supra,* and other statutory enactments which modified the doctrine of the common law. The statute law of this State, in 1843, did not affect that doctrine to any greater extent than the statutes of New York referred to in the foregoing cases.

In *Newcombe, Judge, v. Stebbins et al.,* (9 Metc. 540,) the clause of the will construed was as follows: " I give and bequeath to my son William, to hold to him and his heirs forever, all the rest and residue of my real and personal estate, wheresoever situated, including therein all the real estate bequeathed to my wife, subject to the following liens, payments, and charges : *first,* the payment of all debts I owe at my decease, and all funeral charges, and the erection of a suitable monument at my grave ; *second,* to pay to my three daughters, Louisa, Lucy, and Mary, each, and to Maria, the wife of Josiah Brown, of Hatfield, the sum of seventy dollars, provided he cancels a claim of nearly that amount he holds against my son Lansford, which I gave encouragement to see paid ; the aforesaid liens and payments to be made, one-half in two years, and one-half in

three years from my decease, with interest from that event. I hereby nominate and appoint my son, William Stebbins, executor of this my last will and testament." The executor, who was the same person as the devisee, entered upon the real estate, and received the rents and profits for two years, in notes made payable to him *as executor*. The court, in the opinion delivered by Hubbard, J., speaking of the liability of the executor to account to the creditors for the rents of the real estate, said : "He would only be liable in equity, as a trustee, and could not be required, by the mere force of such liability, to account as executor ;" and further, in answer to the position taken by counsel that, being responsible as trustee, it would avoid circuity of action to charge him as executor, the court said, "By sustaining such a position, his bondsmen would be held accountable for rents and profits accruing after the decease of the testator, and for years perhaps ; a responsibility not contemplated nor covered by the bond." One of the conditions of the bond seems from the report of the case to have been " to administer according to law." And there seems to be no substantial distinction between the effect of such a condition, and one to " perform all the duties which are or may be required of them as such executors," which is the condition of the bond in the case in hand.—See also the case of *Judge v. Claggett,* 36 N. H. 381.

In *Ross v. Barclay,* (18 Penn. 179,) there was a devise of lands to an executor upon trust, and Gibson, C. J., in delivering the opinion of the court, said : "On the foot of the maxim that, when different rights meet in the same person, they are to be treated as if they were different persons, courts of equity, recognizing the union of executor and trustee in the same individual, *reddendo singula singulis,* have considered real estate, directed to be sold for payment of debts, as equitable assets, and consequently as the subject of a trust. * * * * With us, land has perhaps always been legal assets ; and when a trust is created, to bring it into a course of administration, it is proper that an administrator should succeed to the execution of it ; but the statute was not intended for a trust unconnected with an executor's ordinary duties." The statute referred to

did not empower an administrator with the will annexed to execute a trust of land confided to an executor, by title or by name, for any other purpose than to sell for the payment of debts. And the Chief-Justice further said, that by the act relating to executors and administrators, they " may execute a power to sell, in order to bring the land into a course of administration, but not to execute a trust for a collateral purpose ; for instance, to manage the property and invest the proceeds of accumulation ; or to maintain the widow and children ; or to turn the land into money for the convenience of partition."—See, also, *Aston Estate*, (5 Whart. 228,) which seems to be in point from the note made from it in the U. S. Digest, but I have been unable to obtain the report itself.

In *Hall v. Cushing*, (19 Pick. 395,) it was held, that an executor and his sureties were liable for the unfaithful administration in the execution of a power conferred by the will to invest the proceeds of the sale of personal property; and the court say : " And generally, the executor is bound to comply with the directions of the will, so far as they may relate to the administration of the estate, and may be beneficial to the assets while in his possession for that purpose ; and a neglect to do so would be an unfaithful administration of the estate, for which he and his sureties in the bond would be responsible."

The case of *Prior, ex'r, v. Talbot et al.*, (10 Cush. 1,) holds that an executor, who is also constituted a trustee, is responsible as executor until he gives a bond as trustee; and the case of *Dorr v. Wainwright et al.*, (13 Pick. 328,) is the only authority referred to ; and in that case there was a bequest of *personal* property, and the court say : " Whatever questions might arise upon the effect of this devise of the real estate, they are not now under consideration, and the only question is, what is the effect of this clause in the will as a bequest of personal property." And further, "that as the will is a law to the executor, and his duty is to administer, that is, to apply, manage, and dispose of the estate, according to the will, the duties of executors, and the obligation of their sureties, may be as various, as the infinitely varying forms in which wills can be legally made;"

and " that any default of the executor in the discharge of his trusts, and the execution of his official duties, whether such default be in failing to carry into effect the particular directions of the will, or in the non-performance of the general duties prescribed by law, is an express breach of the bond, the condition of which is to administer the estate according to the will." This language must be construed with reference to the question before the court ; which was as to the liability of an executor and his sureties for an unfaithful administration of the *personal* estate, and the trusts relating thereto created by the will.

In the case of *Barker, ex'r, v. May et al.*, (9 Bar. & Cress. 489,) it was held, that a devise of lands to executors to be sold, makes the money arising from the sale equitable, and not legal assets ; and that a legatee could not sustain a proceeding in the ecclesiastical court, to recover a legacy out of such assets.

In *Deering v. Adams*, (37 Maine, 264,) the court say : " The bonds given by executors will not protect the estate against the non-feasance or mis-feasance of the trustees, though they be the same individuals."

In *Leavitt v. Wooster*, (14 N. H. 550,) there was a devise of real and personal estate to the widow of testator during her life, provided she should see his daughter had a decent support, and should pay certain legacies. The widow was appointed sole executrix of the will. Her bond was in the common form. The court held, that "if another person had been the trustee, the sureties of the executrix would not have been liable for the performance of the trust. Where the duties of each character are distinguishable, why should the sureties for the performance of the ordinary duties of an executrix be holden for the performance of duties of a different character. And our opinion is, that this is not a trust which the executrix is bound to perform, in order to administer the estate according to the condition of the bond, and that the sureties are not liable."—Also see *Gregg v. Carrier*, 36 N. H. 200.

In *Mason Co. v. Lee*, (1 Mon. Ky. R. 247,) the court, in speaking of lands devised by a will to the executor to be sold, said : " Whether they be simply directed to be sold by

him, or are devised to him to be sold for the payment of debts and legacies, they are considered not as legal, but as equitable assets, and can only be reached in his hands as executor, in a court of equity, and not in a court of law." 1 Marsh. 381 ; *Monroe's Executrix v. Wilson*, 6 Mon. 122 ; *Helm et al. v. Darby's Adm'r*, 3 Dana, 166 ; *Clouda's Ex'r v. Adams*, 4 ib. 603.

In the case of *Speed's Ex'rs v. Nelson's Ex'rs*, (9 B. Mon. 499,) the court held, that the money arising from the sale of lands, devised to executors for the payment of debts, is not legal assets in their hands, but is a trust fund in their hands, which a court of equity *alone* can take jurisdiction to enforce its proper administration ; and further held, un-der the statutes of Kentucky and the bond required to be given by an executor, that "though the proceeds of land, if charged with the payment of debts, constituted equita-ble assets in the hands of the executor, the sureties were not liable therefor." It *may be* that, under the statutes of this State in force in 1843, and the condition of the bond of appellant, this court might hold, that the sureties might be held liable for money arising from the sale of land, sold by an executor, under a power conferred by the will, for the payment of debts ; yet the case last cited may be consid-ered an authority, at least, in the reasoning employed by the court, to establish the proposition, that the sureties on the bond of an executor, such as the one in this case, are not liable for the default of the executor in the administra-tion of trusts imposed by the will, which are not included within the ordinary duties of an executor, and which are personal, and not *executorial* trusts.

In *Sims v. Lively*, (14 B. Mon. 433,) the devise was to Hardin and Preston Finley, of land and personalty, impos-ing certain duties and trusts ; and in a subsequent clause of the will, they were appointed executors of the will. The persons in whose favor the trusts were created sought to make them and their sureties liable for the default of the executors in the execution of the trusts, and the court held, that "although the devisees are also named as executors, and qualified as such, yet, as their rights and duties in these two capacities are as different, as if the persons to whom

they·pertain were different, so ought their liabilities to be. Their delinquency is not as executors, but as devisees, and, as they have committed no breach of duty as executors, there is no ground for holding their sureties liable for their failure as devisees."

This case is an authority in point, if the case before reviewed, which holds that there is no distinction between a devise to executors by name or by title, (as to "executors hereinafter named,") is sound law. In the case in hand, the devise is " to my executors *hereinafter named*, for the use and benefit" of the appellees.

The case of *Almond et Ux. v. Mason's Adm'r et al.*, (9 Gratt. Va. R. 700,) was a bequest of personal property, to be sold by the executors, and the proceeds divided among testator's children. The executors sold, but failed to divide. It was held, that the sureties were liable for the failure to pay over the proceeds. Such is the head-note to the case, but from the opinion of the court it seems that the executors did not sell, but an administrator *de bonis non* with the will annexed took possession of the property and sold it; and it was held that the sureties on his official bond were liable, " it being the duty of the administrator to pay over the proceeds arising from the sale of such property amongst the residuary legatees, in the mode prescribed by the will ; and by the condition of their bond they bound themselves that he should pay and deliver all the legacy contained and specified in the will, as far as the goods, chattels and credits would extend." I suppose that by some statute of that State, an administrator with the will annexed was authorized to make sales, where the will conferred the power to sell the personalty upon the executor. It is assumed that he had such authority, and that he acted "in virtue of his office, and in performance of the duty imposed upon him by his office and the will of the testator."

In *Doe, ex dem., v. McFarland*, (9 Cranch, 152,) it appears that the testator devised his land to his "executors *hereinafter named*, and to the survivors and survivor of such of them as may act, and their heirs, for the purpose of selling as .much thereof as will pay all my debts." Marshall, C. J., in delivering the opinion of the court on this clause of the

will, said, speaking of the right of the executor to sue for the land : " In such case, the executor sues as devisee. His right is derived from the will, and the letters testamentary do not give the title. The executors are trustees for the purposes of the will."

This court from an early day held, that an executor could not maintain a suit, until the will was probated, and he qualified as provided by law.— *Cleveland's Ex'rs v. Chandler*, 3 Stew. 489 ; *Gardner v. Gantt*, 19 Ala. 666.

In *Leavens v. Butler et al.*, (8 Por. 380,) this court held, that a power conferred on " executors, or the survivors of them," to sell lands, could be executed by the one who qualified, and that the power was "attached to the office." After holding that an executor can not sue in his representative character, "*without* the jurisdiction of the power by which the letters were granted," the court proceeds thus : " The case would be different, if lands were devised to an executor. There the executor might sue as devisee ;" and the case from 9 Cranch, 151, *supra,* is cited alone as authority to sustain this doctrine.

In *Lucas v. Doe, ex dem.*, (4 Ala. 683,) Collier, C. J., delivering the opinion, said : " The powers of an administrator with the will annexed are the same as those which pertain to an executor *as such*, and the question is, whether a devise to sell land is a trust extraordinary, or comes within the appropriate functions of an executor. From what has been said, it would seem that it was the former. This question was largely considered in *Conklin v. Egerton's Adm'r*, 21 Wend. 430. There, as in the case before us, the inquiry was, whether an administrator *cum testamento annexo* could execute a power conferred upon the executor to sell and convey real estate. The conclusion of the court was, that a testament concerned the personal property merely, and though by statute it was allowable to make a will of the realty, it did not follow that the person appointed to execute it would, as to all its provisions, be regarded as an executor. He might be considered a mere *donee of a trust power*, and where he was authorized to sell lands, he would be a trustee, and could not be charged as an executor for anything in relation to the trust."

In the case of the *Heirs and Adm'r of Hitchcock v. The United States Bank*, (7 Ala. 386,) it appears that the devise was as follows : " For the purpose of having my estate properly settled and administered, during the minority of my children, I do hereby appoint my dear wife, Anne, my sole executrix, and I do bequeath and devise the same, both real and personal, to her, in trust, with full powers to sell, either at public or private sale, all or any part thereof, and the proceeds to re-invest and re-sell, at her discretion, for the purpose of paying my debts and legacies, or for a more advantageous investment ; and good and sufficient deeds and conveyances to make therefor," and upon other trusts. This court, Ormond, J., delivering the opinion, says : "Can it be doubted, that if she had declined to qualify as executrix, it would not in the slightest degree have affected this devise in trust ? See the case of *Judson v. Gibbons*, 5 Wend. 225, where a devise to ' *executors hereinafter named* ' was held to be a devise to them individually, and not as executors, from the control given to them over the realty, until the youngest child came of age."

In *Perkins v. Moore*, (16 Ala. 10,) which was a case of a *pecuniary bequest* to certain persons, " to be kept and loaned out upon interest by my executors, until either" (referring to the legatees) " may marry or arrive at lawful age," then to be equally divided between them—held, that " the executors will be considered as holding the fund as executors, and not as trustees." And the court uses this language in the opinion : " If, therefore, the executors had been appointed trustees by the will, independent of their character as executors, and they had elected to hold the legacy as trustees, and not as executors, and after this election the fund had been lost, the *sureties* would not have been liable for their default as trustees merely ; but that they have elected to hold the fund as trustees, and not as executors, must be made to appear by some plain und unequivocal act ; and as there is no act, from which the intention to hold the fund as trustees could be inferred, we could not pronounce that they ever did intend to hold as trustees."

In *Smith's Distributees v. King, adm'r*, (22 Ala. 558,) the court held, that an administrator with the will annexed was

chargeable, as such, for the rents of land, which the will directed to be rented by the executor.

In *Petit's Adm'r v. Petit's Distributees*, (32 Ala. 238,) the court held, that the sureties of a general administration bond, conditioned as required by law, are liable for the waste or misapplication by their principal of money arising from the proceeds of a valid sale of real estate. In this State, by statute, lands are held to be legal assets, when sold for the payment of debts. Hence, sureties on the administration bond are liable for the proceeds of a valid sale of land made by an administrator, when he wastes or misappropriates them.

In *Martin v. Foster's Ex'r*, (28 Ala. 690,) the devise was to "my husband, Benjamin F. Foster, of all the interest which I may have in and to the plantation situated, lying and being in Macon county, now occupied by our negroes and cultivated by my said husband, to him and his heirs forever." All the residue of her estate she bequeathed and devised to him in trust, *first*, for the payment of debts, and then for her three children; and directs that he keep the children with him, and " to use the negroes and other property as we have been accustomed to do;" and out of the profits to expend such sums as he may deem necessary in the education of the children, and when they severally arrive at age, apportion to each one-third of the property vested in him for their benefit. It appears that the husband was appointed executor of the will. The court held, that the executor was chargeable with the value of the use of the land for the two years after the death of the testatrix, as so much in his hands which should have gone towards the extinguishment of her debts; and further held: "Whether, in the after administration of this fund, there will not arise a question of personal trust, which the probate court is incompetent to adjucate, is a point not now before us."

I shall not notice any other of the numerous adjudications touching this subject.

There seems to be a distinction taken in some of the cases, between a power conferred by the will on an execu-

43

tor, to sell *land* for the payment of debts or for distribution, and a power to sell *personalty* for the same purposes, *as to* the authority of an administrator *cum testamento annexo* to execute such power. In the one case it has been held, that he has no authority, and in the other that he has, to execute the power.

There seems also to be a distinction taken in some of the cases, between a devise of a power to executors to sell lands, and a devise of lands to executors, with power to sell for specified purposes. But whether these distinctions, and others similar to them, exist or not, it seems to me that the weight of authority is in favor of the proposition, that a devise *to executors hereinafter named*, of lands, for the use and benefit of others, and specifying the mode of distribution, by directing a sale of them for cash or on a credit, and if on a credit, the mode and measure of security to be taken for the payment of the purchase-money, and then directing how the proceeds are to be divided, is a devise to the executors by name *as trustees*, and not *as executors*. It is a personal devise and trust. And this, although such lands might have been held by them as legal assets for the payment of debts under the statute ; but having proceeded to perform the trust imposed by the will, they thereby elected to hold it as trustees, and not as the personal representives of the estate of the testator. And a beneficiary under the devise, seeking to enforce the trust, can not recover of the surety, on the official bond of the executors, money resulting from the sale of the lands devised to the executors in trust, which they failed to pay over as directed by the will.

The condition of the bond in this case is, to " perform all the duties which are or may be required of them as such executors." This bond does not impose upon the sureties on such bond any liability for the performance of the trusts conferred upon the executors *as trustees*.

However much it may *seem* to comport with what may be termed a sense of natural justice, to hold the sureties liable for the delinquencies of their principals in this case, yet it is clear to us, on long established principles, that it is not in accord with the faithful administration of legal

justice, to hold them responsible beyond the obligations of their contract, as defined by law at the time it was executed. They have the right to insist and stand on the terms of their contract, and can not be held liable beyond the legal obligations thereof.

The demurrer to the bill sufficiently raised the question of the liability of appellant as surety of the executors; and upon the law, as we understand and apply it, the demurrer should have been sustained.

The decree of the chancellor overruling the demurrer being erroneous, it is reversed, and the cause remanded.