# Hurt *et al. v.* Nave's Administrator.

*Motion to set aside Sheriff's Sale under Execution.*

49  459
m118 26?
49  459
d144 401

1. *Objections to evidence on trial before court without jury.* — When a cause is tried in the primary court without the intervention of a jury, the appellate court will not scan with critical accuracy mere technical objections to evidence which was admitted by the court below, but will presume that the presiding judge, in making up his decision, disregarded all illegal evidence.

2. *When sheriff's sale under execution will be set aside on motion.* — A sheriff's sale of lands under execution will be set aside on motion, where the proof shows that by-standers were deterred from bidding at the sale by the irregularities committed by him in conducting it, and that the lands were knocked off at a grossly inadequate price.

3. *Time within which motion to set aside sale may be made.* — Where lands are sold under execution against a deceased defendant, whose administrator is charged with complicity in the irregularities committed by the sheriff, a motion to set aside the sale, made by the succeeding administrator, at the first term of the court next after his appointment, is not too late.

4. *Sale of lands under execution after defendant's death.* — An execution, issued after the defendant's death, was void at common law; but under the statutes of this State (Rev. Code, § 2875), if an execution is received by the sheriff during the defendant's life-time, and levied on his lands, the lands may be sold under an *alias* issued after his death without the lapse of an entire term, unless his estate has been declared insolvent.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. M. J. SAFFOLD.

This was a motion by Powhatan Lockett, as the administrator *de bonis non* of the estate of Jesse B. Nave, deceased, to set aside a sale of certain lands belonging to said estate, which had been made by the sheriff of said county under execution from said Circuit Court. The sale was made on the 1st Monday in March, 1869. The motion to set it aside was made at the September Term of the court, 1870. Peter T. Hurt, the purchaser at the sale, and H. A. Torbett, who was the administrator of said Nave's estate at the time of the sale, were made defendants to the motion. On all the evidence adduced, the court set aside the sale, on condition that the plaintiff in the motion refund to Hurt the purchase-money which he had paid, with interest. This judgment of the court, to which an exception was reserved by Hurt, is now assigned as error, together with several rulings of the court on questions of evidence which require no special notice.

BROOKS, HARALSON & ROY, for appellant.

MOORE & LOCKETT, *contra.*

PETERS, C. J. — This is an appeal from a judgment of the Circuit Court of Perry County, setting aside a sheriff's sale, on motion in that court, made by the administrator *de bonis non*, against the purchaser and the administrator in chief, on the grounds of irregularity and fraud. The cause was submitted to the court, on the trial below, without a jury ; and the judgment was for the plaintiff in the motion, on the evidence set out in the bill of exceptions, which is sent up as a part of the record. The question, then, is, Did the court err in the law, or in the estimate of the preponderance of the evidence ? This is the main question. There are also some questions arising on objections to a portion of the evidence admitted on the trial against the objection of the purchaser.

The original judgment, on which the execution issued, under authority of which the sale complained of was made, was rendered on a forfeited recognizance, against Nave, the deceased, and Torbett, his son-in-law, on the 10th day of November, 1867. The lands sold belonged to Nave, and were sold under execution issued after his death, and while Torbett was the administrator of his estate. The first execution which was issued on this judgment bears date in January, 1868, in the life-time of Nave. This was levied on Nave's lands, which were finally sold, but under another process, an *alias fi. fa.*, as will be hereafter shown. Under the first levy, there was no sale, for want

[Hurt v. Nave's Administrator.]

of bidders. On the 22d day of February, 1868, Nave died. After his death, on the 19th day of May, 1868, a second execution was issued and levied on one hundred and sixty acres of Nave's land, not included in the first levy. This was also returned without a sale, for want of bidders. Torbett administered on the estate of Nave shortly after his death, but the precise time is not stated. On January 9th, 1869, a third execution was issued, which the sheriff received on the 12th January, 1869, and this was returned " no property found," on the 10th day of March, 1869. There was also issued on the 9th day of January, 1869, a fourth execution, which was received by the sheriff on the day of its issuance, and levied on two parcels of land, the property of Nave : to wit, one parcel containing " one thousand three hundred and ninety-six acres, more or less ; " and the other parcel containing " one hundred and sixty acres, more or less." These lands are properly described in the levies, according to the United States surveys, by their proper numbers. This last execution was returned " satisfied in full, April 14, 1869." It seems that the sale sought to be set aside was made under this *fi. fa.* on March 1st, 1869, though it is not so returned on the execution itself. Hurt was the purchaser at the sheriff's auction under this sale. He bid for the one hundred and sixty acre tract $280 ; and for eight hundred and eighty acres of the other tract, $306 ; all which appears from the sheriff's deeds to Hurt, each of which bears date April 3d, 1869. Torbett was then the administrator of Nave's estate ; but he was removed from said administration in July, 1870, and was succeeded by Lockett, administrator *de bonis non*, who is the appellee in this court, and was the plaintiff in the court below. The motion was made to set aside the sale, September 13th, 1870.

The original judgment was for $500 and costs, and there had been $200 paid on the same before the sale. This was known to Torbett, the administrator ; but there was no credit of the same entered on the execution. The sale was conducted by an auctioneer, in the presence of the sheriff, and under his control. The parcel of land containing one hundred and sixty acres was first sold. It was offered in eighty acre lots, and bid off by Hurt. Then an eighty acre lot of the other parcel was offered, and bid off by Hurt. There was some adverse bidding, but it does not appear by whom it was made, or what was its character. After this last above named eighty acre lot was bid off, the mode of offering lots to be sold was changed, and the balance of the land sold was offered and bid off in one hundred acre lots, without any description by metes and bonds, or by numbers of the national survey. There must have been about eight hundred acres sold in this way ; that is, in lots of

[Hurt v. Nave's Administrator.]

one hundred acres each. Torbett was present during the whole sale, and so was Hurt. There were other bidders present during the sale, who wished to buy portions of the lands advertised for sale. When they were anxious to have more specific descriptions of the lands offered for sale, the auctioneer answered their inquiries by replying that the lands offered lay " adjoining to the lands already sold," or that they " lay upon the ground." These persons, who came to buy portions of these lands, went away without bidding, on account of the manner in which the sale was conducted, and the uncertain description of the lands offered. One of these persons says he would have given " $10 per acre for the cane-brake land sold." The cane-brake land was the lot of one hundred and sixty acres that lay upon the Selma and·Montgomery Railroad, and was bid off by Hurt for $280. Torbett told one of the persons who came to the sale to purchase a part of the lands, " that they were being bought in for the estate." But this was not said in the presence or hearing of Hurt, and the evidence was objected to by him. There was also some proof that the lands were worth two or three times as much as the price for which they had been bid off by Hurt. There was also some evidence of communication between Torbett and Hurt, before the sale, about the redemption of the land, if Hurt bought it, and Torbett's wish that Hurt should buy it. It also appeared that Hurt paid the sheriff $508.87 of the purchase money, and also paid $100 besides to Torbett. Why this was done, Torbett " hesitated a good deal, and did not appear ready to explain ; but finally said, that Hurt accounted to, and settled one hundred dollars of the purchase money with him."

It does not appear what the real balance on the judgment amounted to, at the sale. But the judgment was rendered on November 10, 1867, for $500, and costs, and the sale was made on the 1st day of March, 1869. The interest due could not have exceeded that for one year, three months, and twenty-one days. This did not exceed $55, if so much. The costs could hardly have overreached $25 more ; in all, say, $575. On this there should have been a credit of $200, before the sale ; so that, at the sale, the balance due was scarcely greater than $375. Yet it took $608.87 to pay it, which was the price of about eleven hundred acres of land, one hundred and sixty acres of which, one of the witnesses swears, was worth $10 per acre, and that he would have given that for it ; that is, $1,600. Another witness states that he came to the sale to buy, and was prepared to buy three eighties of the " Old Town tract," that is, two hundred and forty acres of the eight hundred and eighty acres sold in the parcel which was bid off in one hundred acre lots ; and that this land was worth from

[Hurt v. Nave's Administrator.]

$2.50 to $3.00 per acre; but the irregularities in conducting the sale were such that he declined to bid, and went away without doing so. This, at the lowest sum above mentioned, would have amounted to the sum of $600. This was within $150 of double as much as was really due on the judgment at the sale.

Hurt testifies in his own behalf, that his purchase was fair, and made in good faith, without any connection with Torbett whatever. Torbett also testifies about the same. In connection with Hurt's evidence, he offered the transcript of a bill in chancery filed by Lockett, as administrator *de bonis non* of Nave's estate, against himself and Torbett; but it does not very clearly appear for what purpose this was done. It could not have been offered as evidence of a pending suit between the same parties litigating the same matters, because the suit in chancery was commenced after the motion. It could not, therefore, have operated as an abatement. Story's Pl. p. 65 *et seq.*; 1 Chitty Pl. pp. 453, 454. Its object, then, must have been to use the admissions in the bill against the complainant. This may be done. 1 Greenl. Ev. § 212. But, like all admissions, all must be taken together. 1 Greenl. Ev. § 201. A bill to redeem under the statute necessarily admits the regularity of the sale. Rev. Code, §§ 2509, 2521. But the bill in this case does not make such an admission. It expressly charges the contrary. It uses this language: "Said sale is not valid, or legal," and "the deeds which said Hurt holds are void, and are a cloud upon your orator's title to said lands, and an objection to his due administration of said lands as assets of said estate, and ought to be given up and cancelled upon proper showing." The bill also shows that Nave died intestate, "greatly embarrassed by his debts." This is not calculated to overturn the merits of the motion, but rather supports them.

Where a cause is tried by the presiding judge without the intervention of a jury, no very critical regard will be paid to mere technical objections to the testimony in the court below. The court is presumed to eliminate all improper evidence when it comes to make up its judgment upon the whole proof. Then, the evidence shown to have been admitted against objections of the party excepting to it must be of such character as necessarily to give a wrong direction to the judgment of the court. The testimony objected to in this case could not have had, in any rational view of it, any such effect. Besides, there was some evidence of a common purpose between Hurt and Torbett, in the sale of the land; and in such case, it often becomes exceedingly difficult to say where they speak and act in common about it. The latter portion of the evidence tends to show that this might have been the case. And if at

any time, during the progress of the cause, testimony that was improperly admitted becomes competent, it will not be considered error that it was not rejected. *Edwards* v. *The State*, June Term, 1873. Then, I think, there was no injury, and, consequently, no error in these exceptions.

Upon the proofs of the whole case, it is evident that the sale here sought to be avoided is not such an one as the court would have permitted to go on in its own presence, or would have confirmed upon a report of all the facts by its officer. The sheriff who enforces a judgment does so under the authority of the court. In chancery, these proceedings are all very properly kept under the control of the court, by requiring the officer to report his action under the court's authority, and submitting this report to the ordeal of confirmation; thus making the act of the officer the act of the court. But, at law, the only report made by the officer is the proper return of the process. Rev. Code, §§ 2852, 2853, 2867. If this is not objected to in proper time, it stands confirmed as a matter of course. Here, there was no return of the sale, but only a return of the execution, satisfied; and the representative of the deceased and his creditors aided in procuring the sale, and was unwilling that it should be disturbed. If he had not received a bribe to be silent, he had placed himself in a situation to be suspected, and he had so discharged the duties of his trust as to forfeit the confidence of the court that had appointed him. After he was removed, his successor proceeded at once to take steps to avoid the sale. Under the circumstances, the delay was not so great as deprived the court of the power to apply this form of remedy to the redress of the injury complained of. With this view of the law, I think the proofs sustain the judgment of the court below, and it must be affirmed.

Besides, it is contended by the learned counsel for the appellee, that the execution under which this sale was made is void, because it was issued after the death of the defendant, Nave. This was so at common law; but it is not so under our statute. Where there has been an execution issued during the life of the defendant, as was done in this case, the Code is an express authority that an *alias* execution may be issued after the defendant's death. The section of the Code referred to is in these words : " A writ of *fieri facias*, issued and received by the sheriff during the life of the defendant, may be levied after his decease ; or an *alias* issued and levied, if there has not been the lapse of an entire term, so as to destroy the lien originally created." Rev. Code, § 2875. The levy, thus allowed, would be a useless thing, unless it could be enforced by a sale. I therefore think a sale is authorized to be made under such a levy, unless the estate of the decedent is declared

insolvent. In *Ray* v. *Thompson* (43 Ala. 434), the main point settled is that the insolvency of the estate of a deceased person, properly ascertained, destroys all liens created by law.

The judgment of the court below is affirmed, with costs.