# Hendon v. White.

## Real Action in the Nature of Ejectment.

1. *Ejectment; what purchaser at execution sale must show, to maintain.* — In ejectment by a purchaser at execution sale, he must show that the defendant in execution had some interest or estate in the lands sold on which the judgment could operate.

2. *Acknowledgment of deed; effect of.* — Where two only of three signers of a deed are mentioned therein as grantors, and they, alone, acknowledge its execution, this dispenses with all further evidence of its execution by them.

3. *Title deeds; when not presumed to be in possession of purchaser.* — The title deeds of a defendant whose estate has been sold and conveyed under compulsory legal process, are not presumed to be in the possession or under the control of the purchaser.

4. *Same.* — In such case the purchaser, under our statutes, need only produce a certified transcript of the records of such deeds, without accounting for the originals.

5. *Sale of land after defendant's death; when valid.* — Section 2875 of the Revised Code authorizes a sale of the defendant's land after his death, under an *alias* or *pluries fieri facias*, when the writ was received by the sheriff while de-

fendant was in life, and has been regularly kept up without the lapse of an entire term.

6. *Conveyance of land; what essential to.* — Under the provisions of the Revised Code, no conveyance is effectual to pass real estate, unless attested by one, and where the grantor cannot write, by two witnesses, or acknowledged before a proper officer.

7. *Acknowledgment of ineffectual conveyance; to what will not relate.* — The subsequent acknowledgment of an ineffectual conveyance to a voluntary grantee, will not relate back to the signing and delivery of the deed, so as to prejudice the rights of execution creditors.

APPEAL from the Circuit Court of Dallas.

Tried before Hon. M. J. SAFFOLD.

This was a real action under the Code, by appellee against appellants. Plea, Not guilty, and that defendants entered upon the lands on the 28th of January, 1868, as tenants of one Spann, and they surrendered the possession thereof to him on the 31st of December, 1868, and that if plaintiff is entitled to recover, he is only entitled to damages for the detention from the time his title accrued, not beyond the time of the commencement of the entry of defendants, up to the time their possession was discontinued.

Plaintiff below claimed as purchaser at execution sale against one Walker, and offered testimony tending to prove that the lands sued for were in possession, formerly, of W. Seawell and wife, and were known as the Seawell place. He then showed the transcript of a deed properly certified from the records of the probate court of Dallas county, the county in which the lands are situated, signed by W. Seawell and his wife, and W. B. Seawell, to Walker; in the body of the deed W. Seawell is named as grantor, and is described in the following language: " William Seawell, as trustee by appointment in chancery of the separate estate of his wife, Matilda Ann Seawell, William Seawell, as husband of said Matilda Ann." The lands conveyed are described as the separate estate of Matilda Ann Seawell, and it does not appear for what purpose W. B. Seawell signed the deed. It was attested by two witnesses, and was acknowledged by W. Seawell and wife, but was not acknowledged by W. B. Seawell, nor was his signing proved by the attesting witnesses or either of them. Defendants objected to the introduction of this transcript, but the objection was overruled, and the transcript admitted in evidence, and the defendants excepted. The testimony also showed that Walker was indebted to one Saltmarsh, by note, executed in 1859, in renewal of a debt contracted in 1853, and that on the 23d of May, 1867, judgment was rendered on the debt against Walker in favor of Saltmarsh's executors; and that on the 7th of March, 1868, two other judgments were rendered against Walker, in favor of other persons, upon debts contracted in 1867. Executions were duly issued on all three judgments

[Hendon v. White.]

during Walker's lifetime, and other executions were regularly issued thereon, without the lapse of an entire term, until January 18, 1869, when the lands sued for were sold under the executions and conveyed to plaintiff by the sheriff. Walker died June 5, 1868.

Defendants were tenants of one Spann, who claimed the premises as administrator of the estate of his deceased wife. She, in her lifetime, was the daughter of Walker, and the testimony tended to show that the lands were bought from Seawell by Walker as a gift for her in 1859, and that when Seawell vacated the premises, Spann and wife went into immediate possession, and Walker never had actual possession or control thereof. On the 4th day of January, 1860, Walker signed and delivered to her a deed, intended as a deed of gift of the premises to her, but it was not attested by witnesses, nor was it ever acknowledged by him until April 28, 1868. It was recorded without attestation or acknowledgment, January 17, 1868. On April 28, 1868, Walker properly acknowledged it, and it was again recorded May 4, 1868. This conveyance was not supported by any valuable consideration, but at the time it was signed in 1860 the testimony tended to show that Walker was unquestionably solvent, and that he " was good in bank for fifty thousand dollars."

It was agreed between the parties that if plaintiff was entitled to recover, the amount of the recovery of damages for the detention should be the sum of nine hundred dollars. Mrs. Spann died in 1870 ; she left children, living at the time of the trial in this case, and her estate was administered on by her husband. John F. Varey was appointed administrator of the estate of Walker on September 19, 1868, and he had it decreed insolvent, April 10, 1871.

The court charged the jury, at the written request of the plaintiff : 1. That if they believed the evidence, they must find for the plaintiff. 2. If they find for the plaintiff, he will be entitled, under the evidence, to recover nine hundred dollars rent for the land, with interest from the 1st of January, 1870. Defendants excepted to each of these charges and now assign them as error.

FELLOWS & JOHNS and P. LOCKETT, for appellant.

PETTUS & DAWSON and BROOKS, HARALSON & ROY, contra.

BRICKELL, C. J. — A plaintiff in ejectment, claiming under a purchase at sheriff's sale, must prove that the defendant in the judgment, to whose title he claims to have succeeded, had an interest or estate in the lands, on which the

judgment operated.  If the defendant in the judgment is the tenant in possession, against whom the action is commenced, the possession is *primâ facie* sufficient evidence.  Or, if the action is against a stranger to the judgment, the recent possession of the defendant, attended by acts of ownership, is *prima facie* sufficient.  *Cook & Hardy* v. *Webb,* 18 Ala. 810 ; *Heydenfeldt* v. *Mitchell,* 6 Ala. 70 ; *Badger* v. *Lyon,* 7 Ala. 564.

The appellee, to show a legal title in Walker, the defendant in the judgments, proved that the premises in controversy were for some years in the quiet possession of Seawell and wife, who cultivated and occupied them, and during such occupancy, they were known as " the Seawell tract of land."  He then offered in evidence the record in the court of probate of Dallas county (in which county the lands are situate), of a conveyance from Seawell and wife to Walker, made prior to the judgment.  This record the parties consented to receive as a certified transcript, and in lieu of such transcript.  The appellants objected to the introduction of the deed, but their objection was overruled.  In the body of the deed, Seawell and wife only are nominated as grantors, and by them it is signed and sealed, and properly acknowledged.  The deed is also signed and sealed by one W. B. Seawell, but for what purpose, or in what capacity, is not disclosed.  The execution of the deed is not acknowledged by him.  In support of the objection, the appellants insist the statutes contemplate an acknowledgment by all the grantors, before the deed can be received, without other evidence of its execution than the certificate of acknowledgment.  It is not necessary to inquire what is the relation of W. B. Seawell to this deed.  It may be, that by signing and sealing, he has adopted it, and rendered all its averments as obligatory on him as if in the body of the deed he had been nominated as a grantor ; or as the warrantor, that the grantors would keep and perform its covenants.  However this may be, when the parties nominated in the body of the deed as grantors, and who only by express words grant and convey, properly acknowledge it, then the acknowledgment dispenses with all further evidence of execution by them.  R. C. § 1544.  It is their deed operating a conveyance of their estate.  *Ayres* v. *McConnell,* 2 Scam. 307 ; *Bradford* v. *Dawson,* 2 Ala. 203 ; *Williams* v. *Jones,* Ib. 314.  The plaintiff had given *primâ facie* evidence that the legal title resided in the grantors, who had acknowledged the conveyance. If this *primâ facie* evidence did not disclose the fact, the burden of proving it rested on the appellants.

When the original of a conveyance, which has been properly acknowledged or proved, and recorded, is not in the custody, or under the control of a party compelled to use it as

evidence, a transcript from the record, duly certified, is re-
ceived in the place of the original. R. C. § 1544. The cus-
tody or control of the title-deeds of a defendant, whose estate
is, by compulsory sale under judicial process, sold and trans-
ferred to another, cannot be imputed to the purchaser; and
under this statute, it was competent for him, without account-
ing for the original, to introduce a certified transcript of the
record of the deed. *Badger* v. *Lyon, supra.*

Lands were not, at common law, subject to execution, or in
any manner bound by a judgment. *Morris* v. *Ellis*, 3 Ala.
560; *Erwin* v. *Dundas*, 4 How. (U. S.) 77. The statutes ex-
isting prior to the Code, subjected them to the writ of *elegit*,
and to the ordinary writ of *fieri facias;* and the operation of
the statutes was, that the judgment created a lien on the lands
from the day of its rendition. *Morris* v. *Ellis, supra.* As it
was the judgment which operated the lien, it followed that
after the death of the defendant therein, lands could not be
levied on and sold for its satisfaction. By operation of law, on
the death of the defendant, the title to his lands was cast on
his heirs, if he died intestate ; or if he died testate, devolved on
his devisees. The judgment and execution would then affect
new parties, who were entitled to a day in court, to show cause
against charging the lands which had descended to, or devolved
upon them. *Lucas* v. *Price*, 4 Ala. 679; *Mansony* v. *U. S.
Bank*, Ib. 735; *Abercrombie* v. *Hall*, 6 Ala. 657; *Burks* v.
*Jones*, 13 Ala. 167 ; *Fry* v. *Br. Bank Mobile*, 16 Ala. 282;
*Erwin* v. *Dundas, supra.*

The statute of 1828 (Clay's Dig. 197, § 27) gave judgment
creditors a *scire facias* against the personal representative
and heirs of the deceased debtor, to subject land descended to
the satisfaction of the judgment, and authorized the award
of execution for that purpose.

The Code repealed the statute authorizing the writ of *elegit*,
or rather it was repealed because not reënacted therein. It
prescribes the form of a writ of *fieri facias*, the mandate of
which is directed as well against the lands and tenements, as
the goods and chattels of the defendant. R. C. § 2837. The
*fieri facias* is declared a lien only within the county in which
it is received by the officer, on the lands and personal property
of the defendant, subject to levy and sale, from the day it is
received by the sheriff, and it continues only so long as the
writ is regularly issued without the lapse of a term. R. C. §
2872. The lien of the judgment on lands, under the former
statutes, was not confined to the county to which a writ of
execution issued, nor to the county in which the judgment was
rendered, but was coextensive with the State. *Campbell* v.
*Spence*, 4 Ala. 543. Nor was the lien of the judgment lost,

by the failure of the plaintiff to sue out execution from term to term. *Turner* v. *Lawrence*, 11 Ala. 426; *Bagby* v. *Reeves*, 20 Ala. 427; *De Vendell* v. *Hamilton*, 27 Ala. 156. It will be observed that the Code obliterates entirely the distinction existing under the former statutes as to the lien of judgments and executions. The lien is no longer attached to the judgment, but to the execution. It attaches to lands, and goods, and chattels, at the same time. As to each, it is confined to the county to which the execution issues. The lien as to each is lost by the same *laches*, the failure to keep alive the execution from term to term. The distinction having been obliterated thus far, the Code not only does not authorize a *scire facias*, or other remedy by which lands descended can be subjected to the satisfaction of a judgment against the ancestor, but it declares in express terms : " When a judgment has been rendered against the decedent, before his death, no execution can issue thereon against the personal representatives, except in the case provided for in section 2875 (2459) ; nor can the judgment be revived against them except by suit on the judgment." R. C. § 2289. Section 2875, provides : " A writ of *fieri facias* issued and received by the sheriff during the life of the defendant may be levied after his decease, or an *alias* issued and levied, if there has not been the lapse of an entire term, so as to destroy the lien originally created." The judgment not now operating a lien, and the writ of *fieri facias* issuing as well against lands, as against goods and chattels, and the lien being attached to it, the section of the Code last quoted cannot be construed otherwise than to authorize the levy and sale of lands, as well as goods and chattels, under an *alias* or *pluries fi. fa.*, which is a regular continuance of execution, after the death of the defendant. No revivor can be had against his heirs or personal representatives, and if such sale is not authorized by this statute, the lien is lost. There is not a want of conformity of the writ to the judgment, in such case, as there was when the judgment was a lien. Then, the lands having descended, the execution would not authorize a sale, when the heir in whom the title resided was not a party to the judgment. Now, the execution conforms to the judgment, and the *alias* or *pluries* is not original process, but a continuation of the original issuing in the life of the ancestor, to which the law attaches a lien. The levy and sale of the real estate was not therefore void because made under *alias* and *pluries fi. fa.* regularly issued after the death of the defendant. *Hurt* v. *Nave*, 49 Ala. 459. Such was the law in reference to personal property, prior to the Code. See authorities, 1 Brick. Dig. 893, § 43. The evident purpose of the Code is to obliterate the distinction previously existing between liens on lands,

and goods, and chattels, and to prescribe a uniform rule operating alike on each, and conforming to the law as it had been declared as to goods and chattels.

Walker, the defendant in the judgments, on the 4th April, 1860, in consideration of natural love and affection, made an instrument in writing purporting to convey the lands to his daughter, Mrs. Spann, under whom the appellants claimed to hold possession. This instrument was not attested, nor was it acknowledged before any officer, authorized to take the acknowledgment of conveyances, until April 28, 1868, after the rendition of the judgments under which the appellee claims to have purchased, and while executions issuing thereon were in the hands of the sheriff of the county in which the lands were situate.

The Code declares conveyances for the alienation of lands must be attested by one, or where the grantor cannot write, by two witnesses. An acknowledgment of execution, before an officer authorized to take it, dispenses with the necessity of attestation. R. C. §§ 1535-6. By the common law, neither attesting witnesses nor an acknowledgment of execution before a public officer was necessary to the validity of a deed. These constituted only evidence of authenticity, which compelled a party relying on the deed to proof of a different character from that he would otherwise be required to produce. *Robertson* v. *Kennedy*, 1 Stew. 245 ; *Dillingham* v. *Brown*, 38 Ala. 311. Prior to the Code this rule of the common law obtained here. *Robertson* v. *Kennedy, supra ; Wiswall* v. *Ross*, 4 Port. 321. By the ancient common law, a feoffment was the mode by which lands were conveyed. To its validity livery of seizin was indispensable, and the livery implied publicity and the presence of witnesses. The statute of uses introduced the modes of conveyance now prevailing, which of themselves operate a transmutation of possession as effectually, in legal contemplation, as the livery of seizin at common law. In earlier days but few could write or sign their names, and it was in this time it became the rule of law, that witnesses were not essential to the validity of conveyances. The publicity and notoriety attending livery of seizin were the only safeguards which could be practically required as a protection against fraudulent and clandestine conveyances. Since the statute of uses, even while the common law rule was prevailing, it was but seldom a conveyance was not executed in the presence of attesting witnesses, or after statutes were passed authorizing an acknowledgment of execution before officers of the law, that it was not acknowledged. Common prudence suggests to the parties the importance and necessity of procuring such evidence of execution.

The Code is something more than a mere compilation and

revision of former statutes. Not only are many former statutes entirely omitted, but many of its provisions are repugnant to such statutes. In it are incorporated many of the expositions of the common law, pronounced by this court, and which had not been the subject of legislative enactment. So, in many of its provisions, it abrogates common law principles which the decisions of this court had firmly engrafted on the jurisprudence of the State. It approximates very nearly the acceptation of the title applied to it : " A body of laws established by the authority of the State, and designed to regulate completely, so far as a statute may, the subjects to which it relates." In its interpretation and construction, it is necessary so to regard it, if full effect is given to the legislative intent in its adoption, and if all its provisions are rendered harmonious. The sections under consideration can have but one office to perform in this view. They operate an abrogation of the common law rule, and substitute in its stead the essentials of an alienation of lands. These essentials must be observed, or the alienation is unauthorized and ineffectual. They cannot be esteemed as providing a mere cumulative mode of conveyance, for at common law the mode of conveyance prescribed would be valid and operative, and would have been generally observed. As no conveyances are now in use here which livery of seizin ever attended, the purpose was to require, as indispensable to an alienation of lands, an authentication of the act partaking of the character of the conveyance by which it was done ; as the title could pass only by writing, that there must be witnesses to its execution subscribing in writing, or an acknowledgment before an officer of the law authorized to take and certify it. A safeguard against fraud, perjury, and clandestine conveyances is thus provided. Such safeguard is a necessity to the security of titles.

In the case of *French* v. *French* (3 N. Hamp. 234), in which the conveyance was very similar to that made by Walker to his daughter, — a conveyance founded only on the consideration of love and affection, which was not attested by two witnesses as required by the statutes of that State, was declared invalid as a deed. A like decision, founded on a similar statute, was made by the supreme court of Connecticut, in *Merwin* v. *Camp*, 3 Conn. 35. A statute of Ohio, passed in 1805, declared that deeds for the conveyance of lands " shall be signed and sealed by the grantor, in the presence of two witnesses, who shall subscribe the said deed of conveyance, attesting the acknowledgment of the signing and sealing thereof," &c. A deed attested by one witness only, founded on a valuable consideration, was declared insufficient to pass the legal estate, and inadmissible as evidence of a conveyance. *Courcier*

v. *Graham*, 1 Ham. (Ohio) 154. The supreme court of the
United States, in following this decision, was met by the objec-
tion, that as other modes of conveyance than that prescribed
were not expressly prohibited, the deed should be regarded as
valid at common law. But the court said : " Although there
are no negative words in this clause declaring all deeds for the
conveyance of lands executed in any other manner to be void ;
yet this must be necessarily inferred from the clause, in the
absence of all words indicating a different legislative intent."
*Clark* v. *Graham*, 6 Wheat. 577. The court of appeals of
South Carolina gave the same construction to a similar statute
of that State. *Alston* v. *Thompson*, Cheves' (Law), 271.
The general rule is, that if a statute limits a thing to be done
in a particular form or manner, it excludes every other mode ;
and affirmative expressions introducing a new rule imply a neg-
ative. Sedgwick on Stat. & Cons. 31. This rule appears to
us to be peculiarly applicable to the statutory provisions em-
bodied in a Code intended to supersede, as to the matters em-
braced in it, not only existing statutes, but common law princi-
ples. The instrument intended as a conveyance to Mrs. Spann,
not being attested or acknowledged, was inoperative to pass to
her the legal estate until its acknowledgment in 1868.

It is insisted this acknowledgment must, by relation, be re-
ferred to the day of the signing and delivery of the instru-
ment, and that thereby the instrument becomes effectual from
that day. " *Relatio est fictio juris*," and like all fictions of
law, is designed to answer the purposes of justice, not to prej-
udice the right, or work injustice to any one. They are in-
dulged to preserve and effectuate, not to thwart or subvert legal
rights and remedies. However this conveyance may operate
as against the grantor and his heirs, by relation, it cannot be
permitted to defeat the rights his creditors had acquired.
When they obtained judgments, and regularly issued execu-
tions, they acquired liens, which the defendant in execution
could not destroy or impair. He then had the legal title to
the premises, — a title on which he could have supported eject-
ment against the grantee in the imperfect instrument of con-
veyance. That instrument not being founded on a valuable
consideration, the grantee could not in equity have compelled
its completion, or have enforced it as a contract to convey.
Whether it would be completed rested entirely in the volition
of Walker. The spur of these judgments may have quickened
him into an exercise of this volition variant from that he would
have exercised, if not embarrassed by them. He had as much
power to have made an original voluntary conveyance, operat-
ing to defeat his judgment creditors, as to impart validity to
this imperfect conveyance voluntarily. Each is the creature of

[The South and North Alabama Railroad Co. v. Henlein.]

his mere will. In *Pollard* v. *Cocke* (19 Ala. 188), it is held, the registration of a conveyance after the time within which it should have been recorded, and after a creditor had obtained a lien by judgment, could not by relation postpone or defeat the lien of the judgment. The general rule is, that amendments of pleading have relation to the commencement of suit, without regard to the time or the stage of the cause when introduced. This fiction is not permitted to operate so as to deprive the party against whom the amendment is made of any substantial right. An amendment of a complaint or declaration introducing a new claim, or new matter, as to which the statute of limitations has perfected a bar, cannot by relation be referred to the commencement of suit, to avoid the bar. *King* v. *Avery*, 37 Ala. 169 ; *Bradford* v. *Edwards*, 32 Ala. 168. As is said in *Jackson* v. *Davenport* (20 Johns. 551), " This limitation of the fiction, so as to prevent it from doing injury to strangers, or defeating mesne lawful acts, is the common language of the books." The acknowledgment of the instrument by Walker cannot by relation be referred to its original signing, so as to impair the liens of execution creditors.

The result is, the circuit court did not err in any of its rulings, and the judgment must be affirmed.[1]

3. *Same ; burden of proof.* — The carrier cannot escape liability for loss or injury to property transported under special contract, unless he shows not only a loss or injury from a cause within the limitation, but also that it was occasioned without negligence on his part.

4. *Same; responsibility of carrier of live-stock.* — A carrier, undertaking the transportation of live animals, in the absence of a special contract, is chargeable on its common law liability for their safe delivery ; but is not responsible for loss or injuries resulting from their nature or propensities.

5. *Special contract, validity of; how determined.* — Whether a special contract is

---

[1] This case was decided at the January term, 1875.