# Richardson *v.* Woodstock Iron Co.

*Statutory Action in nature of Ejectment.*

1. *Bill of exceptions; clerical misprision.*—When the bill of exceptions, after stating that the defendants asked the general charge on the evidence, proceeds thus, "and plaintiff objected to the giving of said charge; the court overruled plaintiff's objection, and gave the charge to the jury, to the giving of which charge the *defendants* excepted;" it sufficiently shows that the exception was in fact reserved by the plaintiff, and the clerical error will be regarded as amended.

2. *Homestead; what constitutes.*—A tract of land within the statutory limitations as to value and area, on which is a dwelling-house, where the owner resides with his family, continues to be his homestead, notwithstanding a sale and invalid conveyance, until his removal, a few days afterwards, into a house on another tract of land, which he had built with a view to removal.

3. *Alienation of homestead; acknowledgment by wife after death of husband.*—A conveyance of the homestead, signed by husband and wife, but not acknowledged by the wife as required by law (Code, § 2508), is a nullity; and an acknowledgment by her after the death of the husband, with certificate thereof in proper form, does not defeat or affect the title of his heirs.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

This action was brought by Lucy Richardson and others, children and heirs at law of Winfrey Bonds, deceased, against the Woodstock Iron Company, C. A. Sprague, and others; and was commenced on the 20th April, 1889. The tract of

[Richardson v. Woodstock Iron Co.]

land sued for contained 160 acres, and had been the homestead of said Winfrey Bonds for several years prior to the 5th January, 1880, when he and his wife conveyed it by deed to C. A. Sprague, on the recited consideration of $1,200; and it was admitted that this was about the value of the land at that time. The sale to Sprague was made in April, 1879, and $600 of the purchase-money was paid in cash; but only a bond for title was then given, and a conveyance was executed January 5th, 1880, when the balance of the purchase-money was paid. The deed was signed by Bonds and his wife, and attested by two witnesses; but there was no acknowledgment by Mrs. Bonds, on examination separate and apart from her husband, nor certificate thereof. Winfrey Bonds died, intestate, on the 13th August, 1884, and owed no debts at the time of his death. In November, 1881, Sprague sold and conveyed the land to the Woodstock Iron Company, but afterwards bought back a part of it; and the other defendants claimed under them. On the 14th January, 1889, Mrs. Bonds made an acknowledgment of the conveyance by her husband and herself which was certified in proper form, and indorsed on the deed.

J. A. Burgess, one of the attesting witnesses to the deed to Sprague, testified on behalf of the plaintiffs, that Bonds and his family continued to live on the place, which was cultivated as a farm, for a week or more after the conveyance to Sprague, and then moved into a small house on another tract of land, which Bonds had bought in November, 1879, and on which he had commenced the erection of a dwelling-house for himself and family; that Bonds said, "prior to Jan. 5, 1880, and while the house was in course of construction, that he was building it to move into and live with his family, but was not going to move until Sprague paid him the balance of the purchase-money, and he could then complete his new house and move into it; that he did not intend to sign any deed, nor give Sprague possession, until the balance of purchase-money was paid." He testified, also, that Bonds slept several nights on the new place, sometimes with witness, and sometimes in the cotton-house, while the dwelling-house was in process of construction, but that his meals were sent to him from home while he was on the other place.

On all the evidence, the substance of which is above set out, the plaintiffs asked the court to charge the jury, that they must find for them, if they believed the evidence; and they excepted to the refusal of this charge. Another exception was reserved to a charge given, which is set out in the opinion of the court. The charge given, and the refusal of the charge asked, are assigned as error.

[Richardson v. Woodstock Iron Co.]

CECIL BROWNE, and KELLY & SMITH, for appellants, cited *Bryant v. Hutchinson*, 30 Ala. 442; *King v. Martin*, 67 Ala. 177; *Howe v. Ashley*, 60 Ala. 496; *Smith v. Pearce*, 85 Ala. 264; *Alford v. Lehman, Durr & Co.*, 76 Ala. 526; *Shipman v. Cooper*, 80 Ala. 256; *McGuire v. Van Pelt*, 55 Ala. 344; *Halso v. Seawright*, 65 Ala. 431; *Scott v. Simon*, 70 Ala. 352; *Hood v. Powell*, 73 Ala. 171.

KNOX & BOWIE, *contra.*—(1.) As against the grantors, the subsequent acknowledgment by the wife cured the defects of the conveyance, and took effect by relation from its date; and it has the same effect as against the heirs, who only succeed to the rights of their ancestor as volunteers, though it would not be allowed to prejudice the rights of creditors and purchasers for value.—*Johnson v. McGehee*, 1 Ala. 186; *Nelson v. Holley*, 50 Ala. 3; *Hendon v. White*, 52 Ala. 597; *Balkum v. Wood*, 58 Ala. 642; *Cahall v. Building Asso.*, 61 Ala. 232; *Vancleave v. Wilson*, 73 Ala. 387; *Pearce v. Smith*, 85 Ala. 263; Thompson on Homestead, § 43,; 47 Penn. St. 230; *Howze v. Howze*, 2 S. C. 232; *Clubb v. Wise*, 64 Ill. 160; *Dawson v. Holt*, 44 Texas, 179; 65 Ill. 383; 36 Ill. 243; 46 Ill. 271; 49 Ill. 391; 36 Texas, 686. (2.) On the facts shown by the record, it does not appear that the property was the homestead at the time of the execution of the conveyance, and it was in fact abandoned a few days afterwards.— *Blum v. Carter*, 63 Ala. 235; *Vasey v. Trustees*, 59 Ill. 191; 43 Ill. 174; 36 Ill. 243; 43 Ill. 231; 48 Ill. 367; 69 Ill. 448; 16 Texas, 56; 19 Texas, 273; Thompson on Homestead, 483, 276; 43.

McCLELLAN, J.—The bill of exceptions, as to one point reserved, is in the following language: "The defendants then asked the court to give the following charge, which was in writing, viz., 'If the jury believe the evidence, they must find for the defendant', and plaintiff objected to the giving of this charge. The court overruled plaintiff's objection, and gave the charge to the jury; to the giving of which charge the *defendants* jointly and severally excepted." The recital quoted, that the *defendants* excepted, is so manifestly a clerical misprision that we will treat the exception as having been properly reserved by the plaintiffs.

We entertain no doubt that, under the facts adduced on the trial, the land in controversy constituted the homestead of Winfrey Bonds on January 5, 1880, the date of the attempted conveyance by him and his wife to Sprague.—*Smith v. Pearce*, 85 Ala. 264.

[Richardson v. Woodstock Iron Co.]

The one other question presented by this record is, whether, in case the wife fails to acknowledge a conveyance of the homestead, as required by section 2508 of the Code, at the time of its execution, or subsequently during the life of the husband, she may do so efficiently, as against the heirs, after his death. The point has not been decided in this State, nor elsewhere that we are aware of. It has been several times adjudged, that the certificate of such acknowledgment may be added, and that the acknowledgment itself may be made, at any time after the signing of the deed, and be effectual by relation from the date of signature, provided the rights of purchasers or creditors have not supervened.—*Johnson v. McGehee*, 1 Ala. 186; *Nelson v. Holley*, 50 Ala. 3; *Hendon v. White*, 52 Ala. 597; *Balkum v. Wood*, 58 Ala. 642; *Cahall v. Citizens' Mut. Build. Asso.*, 61 Ala. 387; *Smith v. Pearce, supra*; *Vancleave v. Wilson*, 73 Ala. 387. And in some of these cases it is said, that such after acknowledgment and certificate will have relation back to the delivery of the instrument, and validate the otherwise void conveyance from that time, as against the grantor and his heirs.—*Hendon v. White, supra*. We apprehend, however, that what was meant by this reference to heirs was no more than this, when applied to a case like the present: that where the subsequent acknowledgment was made in the life-time of the husband, neither he, nor his heirs after his death, could impeach the deed thus perfected. The acknowledgment involved in that case was made by the grantor himself, and hence no question arose, or could have arisen, as to the vested rights of his heirs. No other of the cases refers to heirs at all, and the question now presented is, we repeat, new to this court, and entirely an open one so far as adjudications in this or any other States are concerned.

On principle, however, it seems to us clear, that the acknowledgment relied on here can not have the effect claimed for it. This conclusion, it may be admitted, is to the last degree inequitable, in that it involves payment to the ancestor, for lands which notwithstanding pass to the heirs; but it can not be avoided, without violence to well settled legal doctrines. The deed of Bonds and wife to Sprague, being of the homestead, and not acknowledged by the wife, as required by the statute, was absolutely void.—Code, § 2508; *Crim v. Nelms*, 78 Ala. 604; *De Graffenreid v. Clark*, 75 Ala. 425. The husband, at the time of his death, had a perfect title to the land. The deed had no operation by way of estoppel, or otherwise, against him. It was an utter nullity.—*McGuire v. Van Pelt*, 55 Ala. 345; *Halso v. Seawright*, 65 Ala. 431; *Alford v. Lehman*, 76 Ala. 526. Upon his death,

[Richardson v. Woodstock Iron Co.]

his perfect title passed instantly into his heirs, the plaintiffs in this suit. With the title thus lodged in Bonds' children, his widow has no connection. In the lands she had no interest, except in recognition of the title of the heirs. No estate then existed out of the heirs, which she could convey, except by way of release to the heirs themselves. It would be an anomaly, indeed, to hold under this state of law and fact that the widow, thus without alienable interest of any kind or to any extent in the land, could, by the mere acknowledgment of a deed, which was essentially a nullity when the heirs took a perfect title, defeat their rights, and in legal effect convey their lands into third persons.

We do not think it can be done. We apprehend that the power to give vitality to such a void conveyance, by after acknowledgment, ceases whenever the estate, assuming the invalidity of the deed, has passed into third persons, or rights of third persons have attached to it. We can not conceive that it can be material whether these third persons are heirs, devisees, purchasers or creditors, or whether their estates or rights have accrued by descent, devise, sale, or judgment liens. This conclusion, we think, is enforced by a consideration of two clearly established propositions of law: *First*, a deed can not be delivered after the death of the grantor; *second*, that the mere fact that the deed of the homestead, void for the lack of the wife's privy acknowledgment, is given into the possession of the nominal grantee, is only a conditional delivery, and a conditional delivery, unless it be in escrow, is, in legal contemplation, no delivery at all. From these postulates it results, that the deed had never been, and could never be delivered, and nothing that the widow could do could, in any way, affect the title of the heirs.—*Cahall v. Citizens' Mut. Asso.*, 61 Ala. 246; *Jackson v. Leek*, 12 Wend. 105; *Sholnberger v. Look*, 34 Pa. St. 24; *Fischer v. Hall*, 41 N. Y. 416; *Fay v. Richardson*, 7 Pick. 91; *Woodbury v. Fisher*, 20 Ind. 387; 5 Amer. & Eng. Encyc. Law, pp. 450-1.

These views necessitate a reversal of the judgment, and a remandment of the cause.

Reversed and remanded.